**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

| | |
|---|---|
| TASHA MCRANIELS, | **15-cv-802** |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS and ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS, | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | |

---

Plaintiff, TASHA MCRANIELS, by and through her undersigned counsel, EISENBERG & BAUM, LLP and CROSS LAW FIRM, S.C., for her Complaint against Defendants, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS and ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS, hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Tasha McRaniels is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. During Plaintiff's husband's medical treatment at William S. Middleton Memorial Veterans Hospital, Defendants discriminated against her by failing and/or refusing to provide auxiliary aids and services to accommodate her disability, despite her repeated requests for effective communication.

2. Lip-reading, the ability to understand the speech of another by watching the

1

speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30%. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, because many deaf individuals, including Plaintiff, have difficulty acquiring and communicating in English. Despite this, Defendants forced Plaintiff to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating her disability.

3. Reliance by deaf individuals upon family members to interpret medical communications for them is unwise and dangerous, insofar as family members generally lack the necessary medical vocabulary and are generally too personally and emotionally involved with the deaf person to act impartially with the emotional detachment that is necessary of qualified sign language interpreters, and as they lack the necessary medical vocabulary that a qualified interpreter would command. Despite this, Defendants forced Plaintiff's husband to interpret for her, instead of properly accommodating her disability.

4. Plaintiff brings this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## THE PARTIES

5. Plaintiff TASHA MCRANIELS brings this action and is an individual residing at 1113 Plum Street, Wisconsin Dells, Wisconsin 53965. Tasha McRaniels is a profoundly deaf individual who primarily communicates in American Sign Language, and she is substantially limited in the major life activities of hearing and speaking within the meaning of the Rehabilitation Act.

6. Defendant UNITED STATES DEPARTMENT OF VETERANS AFFAIRS is an Executive agency of the United States of America, administered by the United States Secretary of Veterans Affairs. As an Executive agency of the federal government, Defendant is subject to the requirements of the Rehabilitation Act.

7. Defendant ROBERT A. MCDONALD, at all times relevant to this Complaint, has been United States Secretary of Veterans Affairs, in which capacity he oversees and is responsible for all actions taken by the United States Department of Veterans Affairs.

8. Defendants operate William S. Middleton Memorial Veterans Hospital (the "Hospital"), a hospital located at 2500 Overlook Terrace, Madison, Wisconsin 53705.

## JURISDICTION & VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B) because the Defendants are an agency and an officer of the United States, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

11. Tasha McRaniels is a profoundly deaf individual who communicates primarily through American Sign Language ("ASL").

12. Tasha McRaniels has limited proficiency in written English, and requires auxiliary

3

aids and services to communicate effectively in a medical setting.

13. Plaintiff's husband is a veteran who served in the United States armed forces.

14. On or about June 12, 2015, Plaintiff and her husband were transferred from another hospital to William S. Middleton Memorial Veterans Hospital so that her husband could receive medical treatment.

15. Plaintiff's husband requested a sign language interpreter for Plaintiff.

16. Hospital staff declined this request on the basis that Plaintiff was neither a veteran nor a patient.

17. Upon information and belief, the Hospital would only have considered accommodating Plaintiff if she had obtained power of attorney over her husband.

18. However, in the event that Plaintiff's husband had lost capacity such that Plaintiff would have had the legal power to make medical decisions for him, Plaintiff would have lacked understanding of her husband's condition and would have been unable to exercise that power and make decisions based on informed consent.

19. Upon information and belief, William S. Middleton Memorial Veterans Hospital does not have or utilize a Video Remote Interpreting ("VRI") service for deaf individuals.

20. Upon information and belief, William S. Middleton Memorial Veterans Hospital only provides foreign language interpretation services, but not ASL interpretation services.

21. Upon information and belief, one reason that the Hospital did not provide Plaintiff with an interpreter is that the Hospital's payment system, at the time relevant to this Complaint, was not able to make payments to outside vendors such as ASL interpreting services.

22. Throughout her husband's medical treatment, up to and including his discharge on or about June 15, 2015 from the Hospital, Tasha McRaniels had little to no understanding of her

husband's medical condition, the tests he underwent and the medication he received, or the instructions for his follow-up care, due to Defendants' failure and/or refusal to provide effective auxiliary aids and services to accommodate her disability.

23. Defendants did not, at any point, provide Plaintiff with adequate auxiliary aids and services to enable her to effectively communicate with Defendants' staff, despite Plaintiff's requests for an onsite ASL interpreter.

24. In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

25. Defendants knew or should have known of their obligations under the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with the Rehabilitation Act.

26. Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

27. Additionally, as a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff was denied the same opportunities that are readily and routinely provided to hearing companions to participate in the care of family members.

28. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of disability is reflected by the Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

29. Defendants discriminated against Plaintiff with deliberate indifference to her

communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

30. Plaintiff anticipates participating in her husband's medical care in the future, whether by choice or necessity, due to the proximity of Defendants' hospital to their home; but she is deterred from doing so due to the discrimination she has faced and expects to face in the future.

## CLAIM 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

31. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

32. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

33. At all times relevant to this action, the United States Department of Veterans Affairs regulations implementing Section 504 of the Rehabilitation Act, 38 C.F.R. Part 15, have been in full force and effect and have applied to Defendants' conduct.

34. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

35. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." 29 U.S.C. § 794.

36. Federal regulations implementing the Rehabilitation Act provide that "[n]o qualified individual with handicaps shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the agency." 38 C.F.R. § 15.130(a).

37. Federal regulations implementing the Rehabilitation Act provide, in part, that the agency may not "[d]eny a qualified individual with handicaps the opportunity to participate in or benefit from the aid, benefit, or service," nor may it "[a]fford a qualified individual with handicaps an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 38 C.F.R. § 15.130(b).

38. Federal Regulations implementing the Rehabilitation Act further provide that "[t]he agency shall take appropriate steps to ensure effective communication with applicants, participants, personnel of other Federal entities, and members of the public." 38 C.F.R. § 15.160(a).

39. Federal Regulations implementing the Rehabilitation Act further provide that "[t]he agency shall furnish appropriate auxiliary aids where necessary to afford an individual with handicaps an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency." 38 C.F.R. § 15.160(a)(1).

40. Federal Regulations implementing the Rehabilitation Act further provide that "[i]n determining what type of auxiliary aid is necessary, the agency shall give primary consideration to the requests of the individual with handicaps." 38 C.F.R. § 15.160(a)(1)(i).

41. Federal Regulations implementing the Rehabilitation Act further provide that "[t]he agency shall ensure that interested persons, including persons with impaired vision or hearing, can obtain information as to the existence and location of accessible services, activities, and facilities." 38 C.F.R. § 15.160(b).

42. The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

43. Defendants discriminated against Plaintiff, solely on the basis of her disability, in

7

violation of Section 504 of the Rehabilitation Act and its implementing regulations.

44. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf persons.

45. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged pursuant to 29 U.S.C. § 794(a).

46. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Section 504 of the Rehabilitation Act;

b. Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c. Issue an injunction ordering Defendants:

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

   ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all

services offered by Defendants;

iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that VRI is not appropriate in all medical situations;

vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vii. to train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Section 504

of the Rehabilitation Act;

viii. to train all their employees, staffs, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing patients;

d. Award to Plaintiff:

i. Compensatory damages pursuant to Section 504 of the Rehabilitation Act;

ii. Reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act; and

iii. Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Respectfully submitted,

EISENBERG & BAUM, LLP

By: /s/ Andrew Rozynski, Esq.
Andrew Rozynski, Esq.
24 Union Square East, Fourth Floor
New York, NY 10003
arozynski@eandblaw.com

CROSS LAW FIRM, S.C.

By: s/ Mary C. Flanner
Nola J. Hitchcock Cross
Wisconsin Bar Number: 1015817
Mary C. Flanner
Wisconsin Bar Number: 1013095

                845 North 11th Street
                Milwaukee, WI 53233
                Phone: (414) 224-0000
                Fax: (414) 273-7055
                njhcross@crosslawfirm.com
                mflanner@crosslawfirm.com

                *Attorneys for Plaintiff*