IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TASHA MCRANIELS,

       Plaintiff,

     v.                                  Case No. 15-cv-802-wmc

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS and ROBERT A.
MCDONALD, SECERTARY OF VETERANS
AFFAIRS,

       Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) OR 12(b)(6), OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1) BECAUSE SHE LACKS STANDING ................................................. 2

II.    PLAINTIFF'S REHABILITATION ACT CLAIM SHOULD BE DENIED UNDER FED. R. CIV. P. 12(b)(6) BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER § 504 TO BRING SUIT ................................... 6

    A.    Sections 504 and 505 of the Rehabilitation Act .................................... 7

    B.    There is no Express Cause of Action Under § 504 Against Defendants in this Case ...................................................................... 10

    C.    There is No Implied Cause of Action Under § 504 Against Defendants in this Case ...................................................................... 13

        1.    No private right of action can be implied by the language and structure of § 504. ............................................................ 13

        2.    A private right of action cannot be implied based on the history of § 504 ......................................................................... 16

        3.    Administrative remedies are available and once a complainant exhausts such remedies, judicial review may be available under the APA. ......................................................... 20

III.    EVEN IF A PRIVATE RIGHT OF ACTION EXISTS UNDER § 504 DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES .................................................................................................................. 22

    A.    A Plaintiff Should be Required to Exhaust her Administrative Remedies Before Bringing Suit Under the Rehabilitation Act ....... 23

IV.    PLAINTIFF'S APA CLAIM SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) BECAUSE SHE FAILS TO IDENTIFY A FINAL AGENCY ACTION THAT WAS REQUIRED BY LAW ................................................. 32

    A.    Plaintiff Fails to Identify a Final Agency Action in this Case ......... 33

        1.    APA review is limited to "final agency action" ................... 33

       2.       Plaintiff fails to identify a final agency action ...................... 34

   B.     Plaintiff Fails to Identify an Agency Action the VA Was Required to Take ...................................................................................................... 36

CONCLUSION ...................................................................................................... 37

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................................ 7, 13, 15

*Atchison, Topeka & Santa Fe Ry. Co. v. Pena,*
44 F.3d 437 (7th Cir. 1994) ............................................................................ 34, 35

*Bennett v. Spear,*
520 U.S. 154 (1997) ................................................................................ 33, 34, 35

*Brown v. U.S. Postal Inspection Service,*
No. H-14-1756, 2014 WL 7072021 (S.D. Tex. Dec. 12, 2014) ........................................... 14

*Cannon v. University of Chicago,*
441 U.S. 677 (1979) ................................................................................ 6, 14, 19, 21

*Carmensich v. Univ. of Texas,*
616 F.2d 127 (5th Cir. 1980) ............................................................................ 29, 30

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................................ 2, 3

*Clark v. Skinner,*
937 F.2d 123 (4th Cir. 1991) ............................................................................ 7

*Cooke v. Bureau of Prisons,*
926 F. Supp. 2d 720 (E.D.N.C. 2013) ............................................................. 25, 26, 27, 31

*Cousins v. Secretary of Dep't of Transp.,*
880 F.2d 603 (1st Cir. 1989) ................................................................... 7, 12, 16, 21

*Deck v. American Hawaii Cruises, Inc.,*
121 F. Supp. 2d 1292 (D. Haw. 2000) ............................................................... 3

iii

*Dep't of Transp. v. Paralyzed Veterans of America*,
    477 U.S. 597 (1986) ............................................................................ 12

*Douglas v. Indep. Living Ctr. of S. California, Inc.*,
    132 S. Ct. 1204 (2012) ......................................................................... 21

*DRG Funding Corp. v. Sec'y of Hous. and Urban Dev.*,
    76 F.3d 1212 (D.C. Cir. 1996) ............................................................. 34

*Edelson v. Chi'ien*,
    405 F.3d 620 (7th Cir. 2005) ............................................................... 13

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ............................................................................ 12

*Foster v. Center Township of LaPorte Co.*,
    798 F.2d 237 (7th Cir. 1986) ................................................................. 2

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ............................................................................ 34

*Freydel v. New York Hosp.*,
    No. 97-CIV-7926(SHS), 2000 WL 10264 (S.D.N.Y. Jan. 4, 2000) ........ 4

*Gary v. F.T.C.*,
    526 Fed. Appx. 146, 2013 WL 1834564 (3d Cir. 2013) ....................... 14

*Godwin v. Sec'y of Hous. and Urban Dev.*,
    356 F.3d 310 (D.C. Cir. 2004) ............................................................. 21

*Int'l Union of Operating Engineers Local 150, AFL-CIO v. Ward*,
    563 F.3d 276 (7th Cir. 2009) ............................................................... 10

*Jones v. Bock*,
    549 U.S. 199 (2007) ............................................................................ 26

*Kinneary v. City of New York*,
    358 F. Supp. 2d 356 (S.D. N.Y. 2005) .................................................... 7

*Krumel v. City of Fremont,*
No. 01-cv-259, 2002 WL 808633 n.4 (D. Neb. Jan. 2, 2002)........................................... 7, 21

*Lane v. Pena,*
518 U.S. 187 (1996)......................................................................................................passim

*Liese v. Indian River Co. Hosp. Dist.,*
701 F.3d 334 (11th Cir. 2012) ..................................................................................... 28, 36

*Lloyd v. Regional Transp. Authority,*
548 F.2d 1277 (7th Cir. 1977) ............................................................................... 23, 24, 31

*Lujan v. Nat'l Wildlife Fed.,*
497 U.S. 871 (1990)........................................................................................................... 33

*Mallett v. Wis. Div. of Vocational Rehab.,*
130 F.3d 1245 (7th Cir. 1997) .......................................................................................... 13

*Maynard v. United States,*
No. 3:CV-06-2331, 2008 WL 4453199 n.3 (M.D. Pa. Sept. 30, 2008) .............................. 21

*McCarthy v. Madigan,*
503 U.S. 140 (1992)........................................................................................................... 22

*McCullum v. Orlando Reg'l Healthcare Sys., Inc.,*
768 F.3d 1135 (11th Cir. 2014) ........................................................................................... 3

*McKart v. United States,*
395 U.S. 185 (1969)........................................................................................................... 26

*Miener v. Missouri,*
673 F.2d 969 (8th Cir. 1982) ............................................................................................. 30

*National R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers,*
414 U.S. 453 (1974)........................................................................................................... 15

*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ........................................................................................................ 36

*Parisi v. Davidson,*
    405 U.S. 34 (1972) ........................................................................................................ 26

*Poynter v. United States,*
    55 F. Supp. 2d 558 (W.D. La. 1999) ................................................................ 27, 31, 32

*Prewitt v. United States,*
    662 F.2d 292 (5th Cir. 1981) ........................................................................................ 27

*Roman v. U.S. Postal Service,*
    821 F.2d 382 (7th Cir. 1987) .......................................................................................... 5

*Sai v. Dep't of Homeland Sec.,*
    99 F. Supp. 3d 50, 2015 WL 8966920 (D.D.C. 2015) .............................................. 7, 12

*San Carlos Apache Tribe v. United States,*
    417 F.3d 1091 (9th Cir. 2005) ...................................................................................... 21

*Shotz v. Cates,*
    256 F.3d 1077 (11th Cir. 2001) ...................................................................................... 3

*Soberal–Perez v. Heckler,*
    717 F.2d 36 (2d Cir. 1983) ..................................................................................... 14, 19

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .......................................................................................................... 2

*Stew Farm, Ltd., v. Natural Resources Conservation Service,*
    767 F.3d 554 (6th Cir. 2014) .......................................................................................... 7

*Summers v. Earth Island Institute,*
    555 U.S. 488 (2009) ........................................................................................................ 2

*Sunderland v. Bethesda Health, Inc.,*
    No. 13-80685-CIV-HURLEY, 2016 WL 403481 (S.D. Fla., Feb. 3, 2016) ..................... 4

*Suter v. Artist M.,*
    503 U.S. 347 (1992) ................................................................................ 7

*Timms v. Metro. School Dist. of Wabash Co., Ind.,*
    722 F.2d 1310 (7th Cir. 1983) ............................................................. 24

*Village of Bald Head Island v. U.S. Army Corps of Engineers,*
    714 F.3d 186 (4th Cir. 2013) ............................................................... 33

*Williams v. Ramos*,
    71 F.3d 1246 (7th Cir. 1995) ................................................................. 1

*Woodford v. Ngo,*
    548 U.S. 81 (2006) ................................................................................ 26

## STATUTES

5 U.S.C. § 551 ........................................................................... 33, 36

5 U.S.C. §§ 701 through 706 ............................................................. 1

5 U.S.C. § 701 ............................................................................. 1, 33

5 U.S.C. § 702 ............................................................................. 1, 21

5 U.S.C. § 704 ....................................................................... 1, 21, 33

29 U.S.C. § 794 ...................................................................... passim

42 U.S.C. 2000 ............................................................................... 9

42 U.S.C. 12111 ......................................................................... 9, 20

42 U.S.C. 12201 to 12204 .......................................................... 9, 20

42 U.S.C. 12210 ......................................................................... 9, 20

## RULES

Fed. R. Civ. P. 12(b)(1) ........................................................ 1, 2, 5, 6, 22

Fed. R. Civ. P. 12(b)(6) ........................................................... 2, 6, 32

## REGULATIONS

28 C.F.R. § 39.170 ..................................................... 25, 26, 27. 30

38 C.F.R. Part 15 ............................................................. 15, 25

38 C.F.R. § 15.103 ............................................................ 6, 31, 37

38 C.F.R. § 15.160(a) ............................................................... 28

38 C.F.R. § 15.170 .............................................................. passim

## OTHER AUTHORITIES

45 Fed. Reg. 72 ...................................................................... 25

49 Fed. Reg. 35 ................................................................. 25, 30

52 Fed. Reg. 25 ...................................................................... 25

Exec. Order No. 12250 .............................................................. 25

Pub. L. 63-102 ....................................................................... 17

Pub. L. 93-112 ....................................................................... 16

Pub. L. 93-122 ....................................................................... 16

Pub. L. 100-259 ...................................................................... 19

Pub. L. 100-630 § 206 ............................................................... 20

Pub. L. 102-569 ...................................................................... 20

# INTRODUCTION

Plaintiff Tasha McRaniels ("Plaintiff"), a deaf individual, brings this action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 through 706. Am. Compl. at ¶¶1, 4, 31-53, ECF No. 10. She alleges Defendants violated § 504 and the APA in not providing her with adequate auxiliary aids when her husband was hospitalized at a Veterans Administration ("VA") hospital from June 12 to 15, 2015. *Id.* at ¶¶1, 4, 11, 14-22, 45-46. Plaintiff seeks declaratory and injunctive relief. *Id.* at pp. 9-11. [1]

# ARGUMENT

Defendants dispute that the VA discriminated against Plaintiff or violated Section 504. For purposes of this motion to dismiss, however, the Court must review the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true. *Williams v. Ramos*, 71 F.3d 1246, 1250 (7th Cir. 1995). Even given that standard, Plaintiff's claims should be dismissed for several reasons.

First, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because she lacks standing. Specifically, she fails to allege that there is a "real and immediate" threat to her of future discrimination by Defendants.

---

[1] In her initial complaint, Plaintiff also sought monetary damages. Compl., ECF No. 1. Defendants previously filed a motion to dismiss, based in part on the unavailability of damages under the Rehabilitation Act. Defs.' Mot. to Dismiss, ECF No. 7. Plaintiff's Amended Complaint does not request damages. Am. Compl., ECF No. 10.

In the alternative, Plaintiff's claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Section 504 of the Rehabilitation Act does not provide a private right of action for disability discrimination by a federal agency conducting a federal program. Rather, judicial review of agency action is available only under the Administrative Procedures Act ("APA"). Assuming a right of action under § 504 exists, Defendants are entitled to summary judgment because Plaintiff failed to exhaust her administrative remedies.

Finally, Plaintiff's APA claim should be dismissed for failure to state a claim because she fails to identify a final agency action for review.

I.      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1) BECAUSE SHE LACKS STANDING

If a plaintiff lacks standing to bring a claim, the court lacks subject matter jurisdiction to consider that claim. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102 (1998). A plaintiff has the burden of showing that she has standing for each particular type of relief sought. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

In this case, Plaintiff brings claims under the Rehabilitation Act and the APA, seeking declaratory relief and a laundry list of injunctive relief. Am. Compl., pp. 8-11. To seek either declaratory relief or injunctive relief, Plaintiff cannot rely on allegations of a past injury but instead must show she is in immediate danger of sustaining a future injury. *Foster v. Center Township of LaPorte Co.,* 798 F.2d 237, 242 (7th Cir. 1986). The threat must be "real and immediate," not conjectural or hypothetical. *City of Los Angeles*

*v. Lyons,* 461 U.S. 95, 101-02 (1983). Past wrongs do not by themselves amount to a real and immediate threat of injury necessary to establish standing. *Id.*

Other than the allegations regarding a past injury during her husband's hospital stay in June, 2015, the only allegation Plaintiff makes regarding future injury is that "she anticipates participating in her husband's care in the future but she is deterred from doing so due to the discrimination she has faced and expects to face in the future." Am. Compl., ¶ 30, ECF No. 10. This allegation fails to demonstrate a real and immediate threat of future discrimination by the VA.

A failure to receive services in the past does not suffice for standing. Courts have repeatedly found that a plaintiff lacks standing where he or she fails to demonstrate a "real and immediate" threat of the need for services in the near future. For example, in *McCullum v. Orlando Reg'l Healthcare Sys., Inc.,* 768 F.3d 1135, 1146 (11th Cir. 2014), the court held that plaintiffs failed to demonstrate that there was a real and immediate threat that their son would be hospitalized again at either of defendant's hospitals. *See also, Deck v. American Hawaii Cruises, Inc.,* 121 F. Supp. 2d 1292, 1298 (D. Haw. 2000)(collecting cases); *See also, Shotz v. Cates,* 256 F.3d 1077, 1081-82 (11th Cir. 2001)(finding plaintiffs did not allege real and immediate threat of future discrimination where they had not attempted to return to courthouse and had not alleged that they intended to do so in the future).

Plaintiff does not allege that it is likely that she will be attending medical appointments at the VA Hospital in Madison again in the near future. According to her Complaint, her husband was hospitalized from June 12-15, 2015. Am. Compl., ECF No.

10.  She filed her Amended Complaint on April 27, 2016, but does not allege that her husband was treated again at the VA Hospital after June 2015, or that he has a condition that makes it likely that he will be treated there again in the near future.  Am. Compl., ECF No. 10.

Even if Plaintiff amended her complaint to sufficiently allege a likelihood of returning to the Madison VA Hospital in the near future, she would still lack standing in this case.  Courts have found that plaintiffs fail to demonstrate a real and immediate threat of future discrimination where a facility's policies or practices have subsequently changed.  For example, in *Sunderland v. Bethesda Health, Inc.*, No. 13-80685-CIV-HURLEY, 2016 WL 403481, *11-12 (S.D. Fla., Feb. 3, 2016), the court found plaintiffs lacked standing because there was no evidence that they would return to defendants' hospitals in the near future, or that they would not be provided with adequate auxiliary aids if they did return.   In reaching its conclusion, the court considered that the fact that the defendants had subsequently demonstrated a willingness to provide plaintiffs with auxiliary aids and had a policy that called for the use of interpreters if other auxiliary aids were unavailable.  *Id. See also, Freydel v. New York Hosp.*, No. 97-CIV-7926(SHS), 2000 WL 10264, *3 (S.D.N.Y. Jan. 4, 2000)(hospital's amended policy for translation services made recurrence of alleged violation even more unlikely), *aff'd* 242 F.3d 365 (2d Cir. 2000).

In this case, Plaintiff alleges that she was refused an interpreter in June 2015 on the grounds that she was not a veteran or a patient.  Am. Compl., ¶ 16, ECF No. 10.  She further alleges the hospital does not provide ASL services.   *Id.*, ¶ 23.  Even assuming

those allegations were true at the time, that past injury does not demonstrate a likelihood of future discrimination. The VA's current policy states that interpreters will be provided for both patients and family members. [2] *See* Declaration of Jane Ludwig ("Ludwig Decl."), June 9, 2016, ¶¶ 8-10. The VA has four different vendors available to provide in-person sign language interpreters, and is in the process of registering a fifth vendor. Ludwig Decl., ¶ 12. The VA has also implemented Video Remote Interpreter service available via computer 24 hour a day, seven day a week at the Madison VA Hospital and is in the process of finalizing connections and equipment for the same service at its clinics. Ludwig Decl., ¶ 13.

Most significantly, when Plaintiff has subsequently requested an interpreter to be present when she attended medical appointments at VA facilities, the VA has made arrangements for a sign language interpreter for her. Ludwig Decl., ¶¶ 16-18. While the interpreter became unexpectedly unavailable for the first appointment, an interpreter was provided for Ms. McRaniels for the other appointments. [3] Thus, Plaintiff cannot show a demonstrated probability that she will be unlawfully denied an interpreter in the future.

---

[2] It is proper for the Court to look beyond the allegations in the complaint and view whatever evidence has been submitted in determining whether subject matter jurisdiction exists under Rule 12(b)(1). *Roman v. U.S. Postal Service,* 821 F.2d 382, 385 (7th Cir. 1987).

[3] On one occasion, the VA arranged for an interpreter to be present for Ms. McRaniels but the interpreter cancelled at the last minute due to transportation issues. Ludwig Decl., ¶ 16. In that instance, the treatment provider was given a laptop in order to type written information for Ms. McRaniels. In addition, the VA now has VRI services available at the hospital, and is in the process of setting up VRI services in its clinics. Ludwig Decl., ¶ 13.

In addition, if a live interpreter or video remote services cannot feasibly be provided, staff has been instructed to communicate with deaf or hearing impaired individuals by use of notes, computers, or other forms of written communication. Ludwig Decl., ¶ 15.  Such forms of communication, while not necessarily an individual's preferred method of communication, are auxiliary aids for purposes of regulations enacted by the VA to enforce § 504.  38 C.F.R. § 15.103.  Thus, Ms. McRaniels cannot demonstrate that the VA will refuse to provide an interpreter or other auxiliary aids for her at future appointments.

Because Plaintiff is unable to demonstrate that there is a real and immediate threat of future injury, she lacks standing to bring claims for declaratory and injunctive relief.  Her claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

II.    PLAINTIFF'S REHABILITATION ACT CLAIM SHOULD BE DENIED UNDER FED. R. CIV. P. 12(b)(6) BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER § 504 TO BRING SUIT

Even if Plaintiff has standing, her claim under § 504 of the Rehabilitation Act should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because she has no private right of action under § 504.

Plaintiff alleges that the VA violated § 504 by not providing her with an interpreter or other appropriate auxiliary aid.  Am. Compl., ECF No. 10.  Assuming Plaintiff's allegations are true,  the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. *Cannon v. University of Chicago,* 441 U.S. 677, 688-89 (1979).  Rather, a

private right of action to enforce federal law must be created by Congress. *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). Courts should not imply a cause of action in the absence of evidence that Congress intended to create not just a private right, but also a private remedy. *Id.* A plaintiff has the burden of demonstrating that Congress intended to make a private remedy available. *Stew Farm, Ltd., v. Natural Resources Conservation Service,* 767 F.3d 554, 562 (6th Cir. 2014)(citing *Suter v. Artist M.,* 503 U.S. 347, 363 (1992)).

As evident by the structure and history of § 504, while a private right of action for Title VI remedies may exist against a non-federal entity that receives federal financial assistance, there is no private right of action under § 504, express or implied, against federal agencies for disability discrimination in federally-run programs. *Cousins v. Secretary of Dep't of Transp.,* 880 F.2d 603, 605-07 (1st Cir. 1989)(en banc); *Clark v. Skinner,* 937 F.2d 123, 125-26 (4th Cir. 1991); *Sai v. Dep't of Homeland Sec.,* 99 F. Supp. 3d 50, 2015 WL 8966920 (D.D.C. 2015); *Kinneary v. City of New York,* 358 F. Supp. 2d 356, 359-60 (S.D. N.Y. 2005); *Krumel v. City of Fremont,* No. 01-cv-259, 2002 WL 808633, *4 n.4 (D. Neb. Jan. 2, 2002).

A.     Sections 504 and 505 of the Rehabilitation Act

Section 504 of the Rehabilitation Act was codified at 29 U.S.C. § 794, and reads as follows:

**29 U.S.C. § 794 Nondiscrimination under Federal grants and programs**

**(a) Promulgation of rules and regulations**
        No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity receiving Federal assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.  Copies of any proposed regulation shall be submitted to appropriate authorizing committees of Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

**(b) "Program or activity" defined**

For the purposes of this section, the term "program or activity" means all of the operations of--

**(1)**(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

**(2)**(A) a college, university, or other postsecondary institution, or a public system of higher education; or

(B) a local educational agency (as defined in section 7801 of Title 20), system of career and technical education, or other school system;

**(3)**(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship--

(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or

(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or

(B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or

**(4)** any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3);

any part of which is extended Federal financial assistance.

**(c) Significant structural alterations by small providers**

Small providers are not required by subsection (a) of this section to make significant structural alterations to their existing facilities for the purpose of assuring program accessibility, if alternative means of providing the services are

available. The terms used in this subsection shall be construed with reference to the regulations existing on March 22, 1988.

**(d) Standards used in determining violation of section**

The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

The Rehabilitation Act contains a separate remedies provision, which was

enacted as § 505 and codified at 29 U.S.C. § 794a:

**29 U.S.C.A. § 794a Remedies and attorney fees**

**(a)**(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e-5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

 (2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5)), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

 **(b)** In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

B.     There is No Express Cause of Action Under § 504 Against Defendants in this Case

An express private right of action is "created by the text of a statute" and "states, in so many words, that the law permits a claimant to bring a claim in federal court." *Int'l Union of Operating Engineers Local 150, AFL-CIO v. Ward,* 563 F.3d 276, 283 (7th Cir. 2009). Neither § 504 itself, nor the remedy provisions in § 505, provides an express right of action for Plaintiff in this case.

Turning first to § 504, that section is completely silent as to private causes of actions or private remedies. 29 U.S.C. § 794(a). It cannot, therefore, convey an express right of action. Section 505, the remedies provision, is equally unavailing in creating an express private cause of action here. Section 505(a)(1), by its terms, is limited to violations of Section 501 of the Rehabilitation Act against "any employee or applicant for employment." 29 U.S.C. § 794a(a)(1). Plaintiff does not allege a violation of § 501 or employment discrimination. Compl., ECF No. 1. Section 505(a)(2) is the remedy section specific to violations of § 504. 29 U.S.C. § 794a(a)(2). That section, however, is also limited. It provides Title VI rights and remedies for violations of § 504, but *only* for discrimination by non-federal entities receiving financial assistance or federal providers of such financial assistance. *Id.* That provision is inapplicable in this case.

A discussion of the Supreme Court's decision in *Lane v. Pena,* 518 U.S. 187 (1996) which addressed the question of sovereign immunity under § 504, is nonetheless appropriate here. In *Lane*, the Court was asked to decide whether the United States had waived its sovereign immunity against awards of money damages for violations of the

Rehabilitation Act by a federal agency.[4] *Lane v. Pena,* 518 U.S. at 189.  The plaintiff sued the Secretary of the Department of Transportation for violating § 504 of the Rehabilitation Act after his enrollment at the Merchant Marine Academy was terminated on the grounds that his diabetes disqualified him from service.  The defendants asserted the United States was protected against damages suits by the doctrine of sovereign immunity.  *Id.*  In response, the plaintiff argued that §§ 504(a) and 505(a)(2) together established a waiver of the Federal Government's sovereign immunity for violations of § 504(a) by Executive agencies.  *Id.* at 192.  The Supreme Court held that there was no such waiver of the government's sovereign immunity.  *Id.*

The Court specifically looked to the remedy provisions in § 505 to determine whether those provisions established a waiver of sovereign immunity for violations of § 504 by federal agencies.  *Id.* at 193.  The Court pointed out that while Congress made Title VI remedies available for violations by "recipients of Federal assistance or Federal providers of such assistance," § 505(a)(2) "makes no mention whatsoever of 'program[s] or activit[ies] conducted by an Executive agency,' the plainly more far-reaching language Congress employed in § 504(a) itself."  *Id.*  From this the Court found that the inclusion of the reference to "Federal provider[s] of financial assistance" in § 505(a)(2) did not extend a waiver of the Federal Government's immunity beyond the narrow category of § 504(a) violations committed by federal funding agencies acting as "federal providers of financial assistance."  *Id.*  The Court further rejected an argument that the

---

[4]  The United States did not appeal a grant of injunctive relief in that case so the question before the Court was limited to monetary damages.  *Lane,* 518 U.S. at 190.

Department of Transportation was a federal provider with respect to the Merchant Marine Academy for purposes of § 505(a)(2) because the department administers the Academy itself. *Id.* at 195 (citing *Dep't of Transp. v. Paralyzed Veterans of America,* 477 U.S. 597, 612 (1986)(funds actually provided to an entity the Federal Government manages itself do not render the agency a "Federal Provider.")).

Thus, it is clear from the Court's analysis in *Lane* that § 505(a)(2), by its terms, is simply not applicable to executive agencies or federal agencies conducting their own programs or activities. The Court's analysis in *Lane* was admittedly directed at the question of sovereign immunity, which is an analytically distinct concept from a private right of action. *FDIC v. Meyer,* 510 U.S. 471, 483-84 (1994). However, *Lane's* recognition of the limitations of the language and structure of §§ 504 and 505(a)(2) is equally persuasive in demonstrating that the statute conveys no private right of action against federal agencies conducting federal programs. *See Sai v. Dep't of Homeland Sec.,* 99 F. Supp. 3d 50, 2015 WL 8966920, *8 (D.D.C. 2015)(relying on *Lane v. Pena* in holding there is no private right of action against federal agencies under the Rehabilitation Act).

Section 505(b), the remaining remedy provision, also does not convey a private right of action against federal defendants because it does not specifically refer to actions against the government. *Cousins, supra,* 880 F.2d at 607. Rather, that section merely provides for fees and other costs in allowable administrative proceedings and suits. 29 U.S.C. § 794a(b). As a result, it does not provide an independent basis for a private right of action. *See e.g., Lane,* 518 U.S. at 194 (Provision for attorney's fees does not constitute waiver of sovereign immunity for actions against federal agencies).

12

Because neither § 504 nor § 505 provides for suits for violations of § 504 by federal agencies conducting federal programs, no express right of action exists under § 504.

C.   There is No Implied Cause of Action Under § 504 Against Defendants in this Case

For similar reasons, there is also no *implied* private right of action under § 504 against federal agencies conducting their own programs or activities.  An implied private right of action is derived from Congressional intent.  *Sandoval,* 532 U.S. at 286-87.  Without such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.*  In determining whether a statute implies a cause of action, a court must consider "whether Congress intended an implied right of action . . . in light of the statute's language, structure, and legislative history."  *Edelson v. Chi'ien,* 405 F.3d 620, 630 (7th Cir. 2005)(quoting *Mallett v. Wis. Div. of Vocational Rehab.,* 130 F.3d 1245, 1249 (7th Cir. 1997)).

The language, structure, and history of § 504 are all devoid of any inference that Congress intended a private right of action against federal agencies conducting their own programs or activities.

1.   No private right of action can be implied by the language and structure of § 504.

As previously discussed, Congress chose not to include executive agencies in the remedies provisions set forth in § 505(a)(2) and the VA here cannot be considered a "federal provider" for purposes of that section.  The Court in *Lane v. Pena* compared the

language of § 505(a)(2) applicable to violations of § 504, with 505(a)(1), which applies to violations of § 501 in employment. *Id.* at 193. The Court pointed out that § 505(a)(1) is worded to apply to "any complaint under section 501", while § 505(a)(2) did not use analogous language to make it applicable to "any complaint under section 504." *Id.* From this, the Court reasoned that Congress did not intend to make § 505(a)(2) applicable to all federal agencies, stating:

> Had Congress wished to make Title VI remedies available broadly for *all* § 504(a) violations, it could easily have used language in § 504(a)(2) that is as sweeping as the "any complaint" language contained in § 505(a)(1).

*Id.* at 193.

Moreover, the only remedies specified by Congress for violations of § 504, are the remedies available under Title VI of the Civil Rights Act of 1964. Courts have held that suit against the federal government are not available under Title VI. *See Soberal–Perez v. Heckler,* 717 F.2d 36, 38-41 (2d Cir. 1983)(Title VI suits not allowed against federal agencies directly administering programs); *Brown v. U.S. Postal Inspection Service,* No. H-14-1756, 2014 WL 7072021, *2 (S.D. Tex. Dec. 12, 2014)(because Title VI does not constitute a waiver of sovereign immunity, plaintiff failed to state claim against U.S. Postal Service). *See also Cannon v. University of Chicago,* 441 U.S. 677, 715, n.51 (1979)("Although willing to extend private rights against discriminatory recipients, [in enacting Title VI] the Government may not have been anxious to encourage suits against itself."); *Gary v. F.T.C.,* 526 Fed. Appx. 146, 2013 WL 1834564 (3d Cir. 2013)( Title VI does not apply to federal agencies such as FTC).

Rather than extend Title VI remedies to executive agencies for violations of § 504, Congress instead required those agencies to establish administrative procedures to enforce § 504 in federal programs. 29 U.S.C. § 794(a). Congress's decision to use the administrative complaint process, and not federal courts, to resolve § 504 claims against federal agencies thus compels the conclusion that no implied private right of action can be found in the statute. *See Sandoval*, 532 U.S. at 290 (where Congress has expressly designated a certain enforcement mechanism and omitted others, courts should not read those omitted remedies into the statute); *National R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers*, 414 U.S. 453, 458 (1974)("When legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.").

The VA established administrative procedures pursuant to § 504, setting forth requirements for compliance with § 504 and administrative complaint procedures for any alleged violations. *See* 38 C.F.R. Part 15. Plaintiff alleges the VA violated those regulations in failing to provide her with an interpreter. Compl. at ¶¶ 36-41, 44. Even if Plaintiff can demonstrate that the VA violated its regulations, no private right of action can be implied. Administrative regulations cannot create a private right of action where none exists in the statute. *See Sandoval*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Allowing a private right of action, in lieu of use of the administrative procedures established by agencies pursuant to § 504, would frustrate the statutory scheme created by Congress.

Finally, the language in § 505(b) implies no private right of action. *See Cousins, supra,* 880 F.2d at 607 ("We do not think that the mere presence of an attorneys' fees provision means the Rehabilitation Act creates an implied right of action against federal agencies.").

        2.      A private right of action cannot be implied based on the history of § 504.

The legislative history of the Rehabilitation Act further emphasizes that no private right of action should be implied here. The Rehabilitation Act was originally enacted in 1973. Pub. L. 93-112. Section 504 was originally enacted to read as follows:

> Section 504.  NONDISCRIMINATION UNDER FEDERAL GRANTS
>
> No otherwise qualified handicapped individual in the United States, as defined in Section 7(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

Pub. L. 93-122, § 504.

The original language of § 504 is significant to this lawsuit for two reasons. First, the original provision prohibited discrimination only with respect to "any program or activity receiving federal financial assistance." In other words, it applied initially only to non-federal entities, not to any programs or activities conducted by federal agencies. Second, there was no remedy provision enacted with Section 504. *See* Pub. L. 93-112.

In 1978, Congress amended § 504 to extend its applicability to programs or activities conducted by Executive agencies:

NONDISCRIMINATION UNDER FEDERAL GRANTS <u>AND PROGRAMS</u>

No otherwise qualified handicapped individual in the United States, as defined in Section 7(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. <u>or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.</u>

Publ. L. 95-602 §119 (emphasis added).

At the same time, Congress also enacted § 505 to provide a remedy provision for the Rehabilitation Act. Pub. L. 63-102, § 120. Section 505 as originally enacted was substantively identical to its current form. *Id.*

Congress's choice in how it amended § 504 and created § 505 in 1978 is notable because its inclusion of "executive agencies" in § 504 was done *simultaneously* with the creation of the remedies provisions in § 505, yet Congress chose to exclude executive agencies in § 505(a)(2). *See* Pub. L. 63-102, §§ 119 and 120. That omission is presumed to be intentional. *Lane,* 518 U.S. at 192-93.

Congress has made substantive changes to § 504 twice since 1978. The first was in 1988, when Congress amended § 504 as follows:

NONDISCRIMINATION UNDER FEDERAL GRANTS AND PROGRAMS

<u>(a)</u>No otherwise qualified handicapped individual in the United States, as defined in Section 7(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any

program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

(b) For the purposes of this section, the term 'program or activity' means all of the operations of —

> (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
> (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
> (2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or
> (B) a local educational agency (as defined in section 198(a)(10) of the Elementary and Secondary Education Act of 1965), system of vocational education, or other school system;
> (3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship —
>> (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>> (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
> (B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or
> (4) any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3);
> any part of which is extended Federal financial assistance.

(c) Small providers are not required by subsection (a) to make significant structural alterations to their existing facilities for the purpose of assuring program accessibility, if alternative means of providing the services are available. The terms used in this subsection shall be construed with reference to the regulations existing on the date of the enactment of this subsection.

Pub. L. 100-259, § 4 (emphasis added).  These amendments, which did not affect § 505 and the provisions in § 504 relating to Executive agencies, are further significant because they were prompted by Supreme Court decisions that Congress found too restrictive in their interpretation of § 504 and other civil rights laws.  *See* Pub. L. 100-259, § 2 ("Congress finds that… certain aspects of recent decisions and opinions of the Supreme Court have unduly narrowed or cast doubt upon the broad application of title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and title VI of the Civil Rights Act of 1964.").

Thus, Congress clearly could, and did, amend § 504 in response to judicial interpretation.  Yet Congress enacted these amendments *after* the Supreme Court held in *Lane v. Pena* that § 505(a)(2) was essentially inapplicable to executive agencies.[5]  It can be assumed then, that Congress, while aware of the *Lane* decision, did not see fit to change either § 504 or § 505 to make the provisions in §505(a)(2) applicable to executive agencies.  *See Cannon*, 441 U.S. at 696-97 (Court should presume Congress was thoroughly familiar with important decisions from federal courts and expected its legislative enactment to be interpreted in conformity with those decisions).

Congress made its final substantive change to § 504 in 1992, adding a new subsection to incorporate the employment discrimination standards from the Americans with Disabilities Act:

---

[5] The 1988 amendments were also enacted after decisions such as *Cannon v. University of Chicago*, *supra*, and *Soberal–Perez v. Heckler*, 717 F.2d 36, 38-41 (2d Cir. 1983), which first implicitly, and later explicitly, interpreted Title VI as providing no private rights of action against the federal government.  Congress's failure to amend § 505(a)(2) after such decisions is significant for that reason as well.

(d) The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.

Pub. L. 102-569, § 506.  As with the 1988 amendment to § 504, this amendment left

unchanged the provisions applicable to Executive agencies for violations of § 504.

Congress has made other amendments to both § 504 and § 505 to update

statutory language and internal statutory references.  *See, e.g.*, Pub. L. 100-630 § 206

(replacing the words "his handicap" with "his or her handicap" in § 504(a) and

replacing reference to "section 198(a)(10)" with "section 1471(12)"in § 504(b)(2)(B)).

None of these additional amendments, however, changed the substance of either

section or changed the provisions applicable to executive agencies.

The language, structure, and legislative history of § 504 thus demonstrates that

Congress did not intend a private right of action against federal agencies for

discrimination in federally-conducted programs.

> 3.    Administrative remedies are available and once a complainant exhausts such remedies, judicial review may be available under the APA.

The fact that the Rehabilitation Act does not authorize a suit against the VA in

this case does not leave an individual without available remedies.  A person who

encounters disability discrimination in a federal program can lodge an administrative

complaint, which the agency will investigate and resolve.  *See, e.g.*, 38 C.F.R. § 15.170.

Once the agency's resolution is final, judicial review of the agency decision may be

available under the APA.  *See* 5 U.S.C. §§ 702, 704; *Krumel v. City of Fremont*, No. 01-259, 2002 WL 808633, at *4 (D. Neb. Jan. 2, 2002) (plaintiff had no § 504 cause of action against the Postal Service because there is no reason to believe that administrative complaint process would be ineffective and judicial review is available through the APA); *Maynard v. United States*, No. 3:CV-06-2331, 2008 WL 4453199, at *1 n.3 (M.D. Pa. Sept. 30, 2008) (following *Krumel*).

The APA is the presumptive mechanism for reviewing agency action, *see Douglas v. Indep. Living Ctr. of S. California, Inc.*, 132 S. Ct. 1204, 1210–11 (2012), and its availability for reviewing allegedly unlawful agency actions further supports the conclusion that direct review under § 504 is unavailable to Plaintiff, *see Cousins*, 880 F.2d at 610 ("[T]he APA's review procedures seem an appropriate way for [the plaintiff] to challenge the agency action here at issue.  There is no reason to strain to find an implied right of action against federal agencies under § 504.").  *See also Godwin v. Sec'y of Hous. and Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004) (per curiam).  The availability of APA review, moreover, dovetails with the congressional command that agencies provide administrative remedies for § 504 violations in federal programs.  *See* 29 U.S.C. § 794(a). Finding an implied § 504 right of action against federal agencies would undermine this administrative scheme.  *See Cannon v. University of Chicago, supra,* 441 U.S. at 703 (private remedy should not be implied if it would frustrate underlying purpose of statutory scheme); *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096 (9th Cir. 2005) ("To permit a case to proceed directly under a federal statute and bypass the APA is not without consequence. . . .  Were litigants able to sue directly under [a federal

statute], they would be able to sidestep the traditional requirements of administrative review under the APA.")(internal citations omitted).

As the language of the statute, the legislative history, and the availability of APA review make clear, § 504 affords no private right of action that enables Plaintiff to seek relief from this Court. Any claim under § 504 against Defendants must, therefore, be dismissed under Fed. R. Civ. P. 12(b)(1).

III. EVEN IF A PRIVATE RIGHT OF ACTION EXISTS UNDER § 504, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

Should the Court find that there is a private right of action under § 504, it should grant summary judgment in favor of Defendants because Plaintiff failed to exhaust her administrative remedies. [6]

As discussed more fully below, the Supreme Court has recognized that there are many good reasons to require exhaustion: it allows the agency to compile an administrative record, balance competing statutory requirements and policy interests, apply its expertise, and correct problems on its own, and potentially conserve judicial resources. *See McCarthy v. Madigan*, 503 U.S. 140, 144–46 (1992) (superseded by statute). These considerations are especially germane to the claims in this case. Plaintiff is seeking program and policy changes at VA facilities. The VA is thus in the best position to determine, in the first instance, the feasibility of such alterations, the resources that

---

[6] Pursuant to the Court's April 27, 2016 Text Order, ECF No. 11, Defendants are required to raise the issue of Plaintiff's failure to exhaust her administrative remedies in this motion.

might be marshaled in support of such modifications, and other solutions that might provide alternative means of access and alleviate the need for litigation.

A. A Plaintiff Should be Required to Exhaust her Administrative Remedies Before Bringing Suit Under the Rehabilitation Act

As already discussed above, when Congress amended the Rehabilitation Act to extend its applicability to executive agencies, it required those agencies to promulgate rules for the enforcement of § 504. The VA regulations contain administrative complaint procedures which apply "to all allegations of discrimination on the basis of handicap in programs or activities conducted by the agency," except for employment complaints. 38 C.F.R. § 15.170(a). These procedures require the VA to investigate complaints, make findings of fact and conclusions of law, and provide appropriate relief if warranted. 38 C.F.R. § 15.170(d)-(l). The regulations also provide specific time frames for agency action, as well as for appeal of an agency decision. *Id.*

To date, no court has addressed the issue of whether a plaintiff must exhaust the administrative procedures set forth in 38 C.F.R. § 15.170 for allegations of discrimination by the VA. Several court decisions, however, should persuade this Court that exhaustion is required.

Prior to the adoption of any agency regulations to enforce § 504, the Seventh Circuit Court of Appeals, strongly suggested that such exhaustion would be required once agency regulations were implemented. In *Lloyd v. Regional Transp. Authority,* 548 F.2d 1277 (7th Cir. 1977), plaintiffs initiated a class action suit under the Rehabilitation Act against two municipal transit authorities for failure to provide handicap

accessibility at federally financed mass transportation facilities.[7] The district court had dismissed the Rehabilitation Act claim on the grounds that the Rehabilitation Act does not provide a private right of action. *Id.* at 1279.

On review, the Court of Appeals reversed, finding that the Rehabilitation Act implied a right of action against recipients of federal funds.[8] *Id.* at 1286. In reaching this conclusion, the court relied on the fact that regulations to implement § 504 had not yet been implemented and no administrative remedy existed, thus providing no alternative other than an independent cause of action for those who were subjected to discrimination. *Id.* The court specifically left open the question of "whether, after consolidated procedural enforcement regulations were issued to implement Section 504, the judicial remedy available must be limited to post-administrative remedy judicial review." *Id.* at 1286 n.29. The Court went on to state, "[A]ssuming a meaningful administrative enforcement mechanism, the private cause of action under Section 504 should be limited to a posteriori judicial review." *Id. See also, Timms v. Metro. School Dist. of Wabash Co., Ind.*, 722 F.2d 1310, 1319 n.5 (7th Cir. 1983)("In *Lloyd* we excused the otherwise-applicable exhaustion requirement because of the absence of administrative remedies to pursue.").

After Congress amended the Rehabilitation Act, the Department of Justice ("DOJ") was given responsibility for coordinating agency implementation of § 504.

---

[7] The plaintiffs in *Lloyd* brought additional claims which are not relevant here. *Id.*
[8] To the extent that Plaintiff in this case will attempt to rely on *Lloyd* to support an argument that a private right of action exists under § 504, such reliance would be misplaced. *Lloyd* involved a suit against federally-funded entities, not executive agencies. In addition, *Lloyd* was decided before the Supreme Court's decision in *Lane v. Pena.*

Exec. Order No. 12250, 45 Fed. Reg. 72,995 (Nov. 2, 1980). The DOJ published its final

regulations at 28 C.F.R. Pt. 39 in 1984. 49 Fed. Reg. 35,724 (Sep. 11, 1984). Those

regulations served as a prototype for the regulations later implemented by the majority

of executive agencies, including the Veterans Administration. 52 Fed. Reg. 25,124,

25,125 (Jul. 2, 1987); 38 C.F.R. Pt 15. Thus, interpretation of those regulations and other

similar agency regulations is relevant to the treatment of the analogous VA regulations.

In *Cooke v. Bureau of Prisons,* 926 F. Supp. 2d 720 (E.D.N.C. 2013), the district court

in the Eastern District of North Carolina examined at length the question of whether

the plaintiffs were required to exhaust the administrative remedies set forth in DOJ

regulations implementing § 504, 28 C.F.R. § 39.170. *Id.* at 731-735. Plaintiffs in that case

were detainees in the custody of the Bureau of Prisons.[9] Plaintiffs brought a claim

under the Rehabilitation Act, alleging the Bureau of Prisons had violated § 504 in failing

to have wheelchair accessible quarters available. *Id.* In deciding the exhaustion

question, the court began by noting that Congress itself did not mandate exhaustion of

the administrative remedies contained in the agency regulations when it amended the

Rehabilitation Act so exhaustion was within judicial discretion. *Id.* at 732-33. The court

pointed out several salient reasons recognized by the Supreme Court for requiring

exhaustion generally:

- Requiring exhaustion promotes efficiency in that an agency can correct mistakes that it has made in connection with a program that it administers before being sued in federal court;

---

[9] The Prisoner Litigation Reform Act ("PLRA") did not apply to the plaintiffs so there was no exhaustion requirement under the PLRA. *Id.* at 726.

- A claim can usually be resolved more quickly and less expensively at the agency level than through litigation in federal court.

- If the claim is resolved at the agency level, the process moots the need for further litigation.

- Even if the claim is not resolved at the agency level, the administrative process will usually produce an record that will help clarify any ensuing litigation in federal court.

*Id.* (citing *Jones v. Bock,* 549 U.S. 199, 219 (2007); *Woodford v. Ngo,* 548 U.S. 81, 88-89 (2006); *Parisi v. Davidson,* 405 U.S. 34, 37 (1972); *McKart v. United States,* 395 U.S. 185, 195 (1969)).

The *Cooke* court then went on to examine three factors that the Supreme Court has focused on in analyzing whether administrative exhaustion should be required. The court first looked at whether requiring administrative exhaustion of the DOJ complaint procedures would result in indefinite or unreasonable delay versus a prompt administrative decision. *Id.* at 733. The court determined that the process set forth in 28 C.F.R. § 39.170 includes prompt deadlines the agency must meet in resolving a complaint under § 504. *Id.* at 734. The court then examined whether the agency is empowered in the administrative process to grant the requested relief. *Id.* at 733-34. The court noted that regardless of whether a claim for injunctive relief is brought under the Rehabilitation Act or under the APA, the requested remedy would be an injunction mandating that the agency make changes in its facilities and programs. *Id.* The court found that the DOJ, through the administrative process, had the power to make whatever changes were necessary to ensure compliance with the Rehabilitation Act. *Id.* Finally, the court looked at whether the administrative process would be adequate,

including whether the agency has expertise and whether the decision-making process is biased. *Id.* In reviewing the procedures provided in 28 C.F.R. § 39.170, the court determined that the administrative process is more than adequate. *Id.* Based on consideration of these factors, the court determined that exhaustion of remedies under 28 C.F.R. § 39.170 was required. *Id.* At 735.

Other courts have also found that administrative exhaustion is required under § 504 for allegations of discrimination by the federal government. *See e.g., Poynter v. United States,* 55 F. Supp. 2d 558, 563 (W.D. La. 1999)(holding that exhaustion of Postal Service administrative remedies is required for a § 504 claim)(citing *Prewitt v. United States,* 662 F.2d 292, 304 (5th Cir. 1981)). The rationale used by those courts is similar to that of *Cooke*, namely, that requiring exhaustion of administrative remedies provides a plaintiff with the ability to obtain a meaningful remedy while conserving scare judicial resources and giving the agency a chance to discover and correct its own errors. *Id.* As the *Poynter* court recognized, "the necessary insight into the operations of the agency is more likely to be generated in useful form through an administrative proceeding than through adversarial clash of interrogatories, depositions, and document productions." *Id.*

While *Cooke* and similar cases are not controlling precedent in this case, the *Cooke* court's analysis of the relevant factors compel a conclusion that exhaustion is required under the VA's regulations prior to any suit for violations of § 504. Like the DOJ regulations, the VA compliance procedures require the agency to investigate all complete complaints submitted and notify the complainant within 180 days, providing

27

findings of fact and conclusions of law, a description of a remedy for each violation, and a notice of a right to appeal. 38 C.F.R. § 15.170(d) and (g). Upon appeal, the head of the agency shall respond within 60 days of receipt of the appeal. *Id.*, § 15.170(j). Thus, the administrative remedy process provides for prompt investigation and resolution of complaints, alleviating any danger of indefinite or undue delay. In addition, the complaint process specifically contemplates that the agency will provide a remedy for each violation found. *Id.*, § 15.170(g)(2). Finally, the procedures provide for an appeal to the head of the agency. *Id.*, § 15.170(h) and (j).

Requiring exhaustion of administrative remedies for alleged violations of § 504 is particularly appropriate given the nature of the requirements for the agency under that section. For example, under its regulations, the VA is required to take appropriate steps to ensure effective communications. 38 C.F.R. § 15.160(a). However, the agency has discretion to determine what type of auxiliary aids are necessary in any given situation and must balance whether provision of particular aids would result in a fundamental alteration in the nature of a program or activity or in an undue financial and administrative burden to the agency. 38 C.F.R. § 15.160(a) and (d). Among the injunctive relief that Plaintiff seeks is access to an American Sign Language interpreter "at any time day or night." [10] Am. Compl., p. 11, ECF No. 10. Requiring a plaintiff to first file a complaint with the agency before suing for such injunctive relief would allow

_____

[10] Defendants note that Plaintiff is not necessarily entitled to round-the-clock access to a live interpreter under the Rehabilitation Act. 38 C.F.R. § 15.170. *See also, Liese v. Indian River Co. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)("Whether a particular aid is effective in affording a patient an equal opportunity to benefit from medical treatment largely depends on context, including, principally, the nature, significance, and complexity of the treatment.").

the agency to correct any mistakes that may have been made, thus potentially alleviating any need for litigation. It would also provide the agency the opportunity to determine the feasibility of such a requirement for its facilities before being sued in federal court. If the agency denied the request because it determined that providing such access would result in an undue financial or administrative burden, the administrative record generated during the complaint process would then clarify the issues if further litigation ensued under the Rehabilitation Act or the APA. These considerations demonstrate why administrative exhaustion should be required for alleged violations of § 504 by federally conducted programs.

A number of courts have held that in suits against *federally assisted* programs, administrative exhaustion is not required. The rationale for these decisions is that the regulations applicable to entities receiving federal assistance do not provide for sufficient relief for individuals who are the subject of discrimination by such entities. For example, the Fifth Circuit Court of Appeals has held that administrative exhaustion was not required prior to bringing a suit under § 504 against a federally-assisted entity. *Carmensich v. Univ. of Texas*, 616 F.2d 127, 135 (5th Cir. 1980), *overruled on other grounds*, 451 U.S. 390 (1981). The court recognized that the purpose of administrative regulations pertaining to discrimination by federally-assisted entities was to initiate termination of federal funds to that entity, not to provide a forum for program beneficiaries to press claims of discrimination against the entity. *Id.* The court further recognized that a hearing process designed to terminate federal assistance to a non-complying entity could even work to the disadvantage of an individual complainant by cutting off

further services to that individual.  As a result, the court found that the administrative

remedy process for termination of federally funded entities was insufficient to require

exhaustion of such process prior to filing suit.  *Id.  See also, Miener v. Missouri,* 673 F.2d

969, 978 (8th Cir. 1982)(not requiring exhaustion of administrative remedies in § 504 suit

against federally funded state entities where regulations adopted by Department of

Health and Human Services did not provide adequate relief to individual plaintiff).

Those same concerns are not applicable here.  The limitations of enforcement

regulations pertaining to federally-assisted programs were specifically recognized by

the DOJ in promulgating its prototype compliance procedures.  In its notes to the final

version of 28 C.F.R. § 39.170, the DOJ stated, "The amendment's legislative history

suggesting parallelism between Section 504 for federally conducted and federally

assisted programs is unhelpful in this area because the fund termination mechanism

used in section 504 federally assisted regulations depends on the legal relationship

between a Federal funding agency and the recipients to which the Federal funding is

extended."  49 Fed. Reg. 35,724, 35,732 (Sep. 11, 1984).  From this the DOJ concluded,

"The Department has decided that the most effective and appropriate manner in which

to enforce section 504 in the federally conducted area is through an equitable complaint

resolution process.  Section 39.170 establishes this process."  *Id.*

The provisions set forth in the VA's analogous regulation, 38 C.F.R. § 15.170,

provide for 1) specific time frames within which the agency must act; 2) required

actions by the agency; 3) potential relief for the complainant; and 4) a process for appeal

to the head of the agency.  38 C.F.R. § 15.170(f)-(l).  It thus provides an adequate

administrative process which should be exhausted prior to the filing of a federal law suit.

Defendants anticipate that Plaintiff will argue that administrative exhaustion is not required because § 15.170(c) says that complaints "*may* be sent to the Secretary of Veterans Affairs or the Deputy Assistant Secretary for Resolution Management." Such an argument fails for three reasons. First, it ignores the clear language in § 15.170(a), which states that "this section applies to all allegations of discrimination on the basis of handicap in programs and activities conducted by the agency." Second, to the extent that a person is always free to ignore perceived discrimination, the filing of a complaint is never mandatory. In other words, the filing of a complaint with the agency is only required if the individual wishes to obtain remedies from the agency, as opposed to doing nothing. Finally, § 15.170(c) allows an individual to choose between sending a complaint to the Secretary or to the Deputy Assistant Secretary, providing further context for the use of the word "may" in that provision.

For the reasons set forth in *Lloyd, Cooke,* and *Poynter*, exhaustion of the administrative remedies set forth in 38 C.F.R. § 15.170 should be required before a plaintiff can bring an action under § 504 against an executive agency such as the VA.

B.      Plaintiff Failed to Exhaust her Administrative Remedies

In this case, there is no dispute of material fact that Plaintiff failed to exhaust her administrative remedies under § 15.170. While she made her dissatisfaction with a lack of interpreters known to local staff at the Madison VA Hospital, she did not submit a complete complaint with the agency, as contemplated in §§ 15.103 and 15.170(d), to

initiate the administrative remedy process.  *See,* Declaration of Audrey Oatis-Newsome, June 7, 2016, ¶ 4.  Failure to do so is failure to exhaust her administrative remedies.  *See Poynter,* 55 F. Supp. 2d at 563 (oral complaints are insufficient to initiate administrative grievance process under Postal Service regulations requiring filing of written complaint).  By not initiating the administrative remedy process, Plaintiff denied the agency the opportunity to determine if mistakes could to be corrected.  The agency was also denied the opportunity to review its practices or provide Plaintiff with appropriate remedies.  Finally, in the absence of an administrative remedy process, there is no agency action or administrative record available for review.

Plaintiff's Rehabilitation Act claim should thus be denied for failure to exhaust her administrative remedies.

IV.    PLAINTIFF'S APA CLAIM SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) BECAUSE SHE FAILS TO IDENTIFY A FINAL AGENCY ACTION THAT WAS REQUIRED BY LAW

While judicial review can sometimes be available under the APA for alleged violations of the Rehabilitation Act, Plaintiff fails to state a claim under the APA here. Plaintiff frames her APA claim as both an agency action (a refusal to provide her with an interpreter or other auxiliary aid) and a failure to act (failure to provide her with an interpreter or other auxiliary aid).  Am. Compl. ¶¶ 47-50, ECF No. 10.

However, Plaintiff fails to state a claim because she does not identify a final agency action suitable for review.  To the extent that she is alleging a failure of the VA to act under § 706, she also fails to state a claim because she fails to identify a discrete act the VA was required by law to take.

A.  Plaintiff Fails to Identify a Final Agency Action in this Case

1.  APA review is limited to "final agency action"

In order to obtain judicial review under the APA, Plaintiff must meet two requirements.  First, she must identify some "agency action" that affects her in a specified fashion; and she must show that she suffered legal wrong because of the challenged action, or is "adversely affected or aggrieved by the action."  *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 882 (1990).

For purposes of the APA, "agency action" is defined in 5 U.S.C. § 551(13), as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  *See also*, 5 U.S.C. § 701(b)(2)("For the purpose of this chapter…'agency action' ha[s] the meanin[g] given by section 551 of this title.").  Each of the five categories of actions identified in 5 U.S.C. § 551(13) are further defined in § 551.  *See* 5 U.S.C. §§ 551(4), (6), (7), (8), (10), and (11).

As evident from the definition of agency action in § 551(13), the term "action" does not encompass all type of agency conduct.  Rather, as used in the APA, "action" is a term of art that is limited to discrete types of agency conduct, namely an agency's *determination* of rights and obligations, whether by rule, order, license, relief, or similar action.  *Village of Bald Head Island v. U.S. Army Corps of Engineers,* 714 F.3d 186, 193 (4th Cir. 2013)(citing *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)) (emphasis in original).

Further, where, as here, review cannot be sought pursuant to specific authorization in the Rehabilitation Act, the agency action in question must be a *final* agency action.  5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 882 (1990)(where

33

review cannot be sought pursuant to specific authorization in the statute, but only under the general review provisions of the APA, the agency action in question must be a final agency action). An agency action is considered "final" when two conditions are met: 1) the action must mark the "consummation" of the agency's decision-making process and must not be of a "merely tentative or interlocutory nature"; and 2) the action must be one by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear,* 520 U.S. 154, 177 (1997). An action is not final if it is only the ruling of a subordinate official or is merely tentative. *Franklin v. Massachusetts,* 505 U.S. 788, 796 (1992). In determining whether an action is final, the court should consider whether the challenged action is "a definitive statement of the agency's position." *Atchison, Topeka & Santa Fe Ry. Co. v. Pena,* 44 F.3d 437, 441 (7th Cir. 1994).

Limiting judicial review to final agency actions serves interests almost identical to those of requiring exhaustion of administrative remedies: it allows an agency to the opportunity to apply its expertise and correct its mistakes, avoids disrupting the agency's processes, and relieves the courts from having to engage in "piecemeal review which is at the least inefficient and…might prove to [be] unnecessary." *DRG Funding Corp. v. Sec'y of Hous. and Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996).

2. Plaintiff fails to identify a final agency action

In this case, Plaintiff fails to identify any action by the VA that could conceivably constitute a final agency action suitable for judicial review. She does not identify any rule, order, license, sanction, or relief that the VA issued or denied, or any equivalent to

such action.   She also does not allege any agency decision-making process that this Court can review.   Instead, she alleges that she requested an interpreter and hospital staff refused to provide one.  Even when viewed in the light most favorable to Plaintiff, that purported refusal by staff cannot be construed as a "determination of rights and obligations" by "rule, order, license, sanction, relief, or similar action."  *See Bennett v. Spear,* 520 U.S. at 177.  It also cannot be construed as the consummation of an agency decision-making process, or a "definitive statement of the agency's position."  *See Id.*; *Atchison, Topeka & Santa Fe Ry. Co. v. Pena,* 44 F.3d at 441.

This is not to say that Plaintiff could never bring an APA claim based on allegations that the VA refused to provide her with an interpreter.  If she alleged that she filed an administrative complaint with the agency under 38 C.F.R. § 15.170 and the agency denied her remedies, she may be able to state a valid claim under the APA. Judicial review at that point would be more appropriate given that the agency would have engaged in an actual decision-making process, and would have had the opportunity to correct any mistakes that might have been made and provided appropriate remedies, thereby potentially alleviating any need for litigation.  In addition, the Court would have an administrative record of the agency's decision-making process in the form of the findings of fact and conclusions of law required under 38 C.F.R. § 15.170(g).  Plaintiff does not allege that she sought, or was denied, administrative remedies.  Thus, she can point to no final agency action for the Court to review and, therefore, fails to state a claim.

B.     Plaintiff Fails to Identify an Agency Action the VA Was Required to Take

Plaintiff's claim under the APA alleging the VA failed to act should be dismissed for the same reasons.  To be reviewable, a claim based on an agency's failure to take action must involve one of the discrete types of agency actions defined in 5 U.S.C. § 551(13), such as a failure to issue a rule within a specified time period.  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).  As discussed, Plaintiff fails to identify an agency action, as defined in § 551(13), that the VA failed to take.

In addition, a claim for failure to act under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete action that it is legally *required* to take.  *Norton*, 542 U.S. at 64 (emphasis in original).  In other words, the agency must have failed to perform a "ministerial or non-discretionary act."  *Id.* at 65 (citation omitted).

Plaintiff's APA claims are based on allegations that the VA did not provide her with auxiliary aids, as required by 38 C.F.R. § 15.170.  Am. Compl., ¶¶ 45-50.  The agency's duty to provide Plaintiff with auxiliary aids, however, is not a ministerial or non-discretionary act.  Plaintiff's right to auxiliary aids is not absolute.  *See Liese v. Indian River Co. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)("Whether a particular aid is effective in affording a patient an equal opportunity to benefit from medical treatment largely depends on context, including, principally, the nature, significance, and complexity of the treatment.").  The regulations require the agency to furnish "appropriate" auxiliary aids "when necessary" to afford an individual an equal opportunity to participate in benefits, programs, or activities of the agency.  38 C.F.R. §

15.170(a)(1). There are different types of auxiliary aids, including telephonic devices, interpreters, note-takers, written materials, and "other similar services or devices." 38 C.F.R. § 15.103. And while the agency must give primary consideration to the requests of the individual, it is within the agency's discretion to determine when, and what type, auxiliary aid is necessary. 38 C.F.R. §15.170(a)(1)(i). In addition, the agency is not required to take any action that would result in a "fundamental alteration in the nature of a program or activity" or in "undue financial and administrative burdens." *Id.* Thus, Plaintiff fails to identify a ministerial, non-discretionary act that the VA failed to take and her APA claim fails to state a claim on which relief could be granted.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated this 10th day of June, 2016.

Respectfully submitted,

JOHN W. VAUDREUIL
United States Attorney

By:
        *s/ Barbara L. Oswald*
BARBARA L. OSWALD
Assistant United States Attorney
Unites States Attorney's Office
Western District of Wisconsin
222 West Washington Avenue, Suite 700
Madison, WI 53703
(608) 264-5158
(608) 264-5724 (fax)
barbara.oswald@usdoj.gov