**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

-----------------------------------------------------------------

TASHA MCRANIELS,

        Plaintiff,

   v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS and ROBERT A.
MCDONALD, SECRETARY OF VETERANS
AFFAIRS,

        Defendants.

**15-cv-802**

**MEMORANDUM IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT**

-----------------------------------------------------------------

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

   I.   Plaintiff Sufficiently Alleges Standing .............................................................................. 1

  II.   Plaintiff Has a Private Right of Action ............................................................................. 4

     A.   The Rehabilitation Act Provides an Implied Private Right of Action .............................. 4

     B.   Alternatively, Plaintiff is Entitled to Judicial Review Pursuant to the Administrative

     Procedures Act ............................................................................................................. 8

CONCLUSION ........................................................................................................................ 17

TABLE OF AUTHORITIES

**Cases**

*Byers v. Rockford Mass Transit Dist.*, 635 F. Supp. 1387 (N.D. Ill. 1986) .................................. 10

*Califano v. Sanders*, 430 U.S. 99 (1977) ...................................................................................... 9

*Cannon v. University of Chicago*, 441 U.S. 677 (1979) ................................................................ 8

*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)................................................... 9

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................ 1

*Cooke v. Bureau of Prisons*, 926 F. Supp. 2d 720 (E.D.N.C. 2013) ........................................... 10

*Cousins v. Secretary of the U.S. Dept. of Transp.*, 880 F.2d 603 (1st Cir. 1989).................... 8, 10

*Darby v. Cisneros*, 509 U.S. 137 (1993)..................................................................................... 11

*Davis v. Astrue*, No. 06 Civ. 6108, 2011 U.S. Dist. LEXIS 92336 (N.D. Cal. Aug. 18, 2011)  5, 6, 7, 8

*Del Monte Fresh Produce NA, Inc. v. US*, 706 F. Supp. 2d 116 (D.D.C. 2010) .......................... 14

*Doe v. Attorney General*, 941 F.2d 780 (9th Cir. 1991) ............................................................ 6, 7

*Estate of Estrada v. U.S. Dep't of Veterans Affairs*, No. 15 Civ. 364, 2016 U.S. Dist. LEXIS 6603 (N.D. Ohio Jan. 20, 2016) ................................................................................................ 4

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................................... 1

*FHJC v. Catholic Managed Long Term Care, Inc., et al*., No. 15 Civ. 8677, ECF Doc. 95 (S.D.N.Y. April 5, 2016) ........................................................................................................... 2

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113 (D.D.C. 2015).. 14, 16

*Freydel v. New York Hospital*, No. 00-CV-7108, 2000 U.S. App. LEXIS 31862 (2d Cir. Dec. 13, 2000)......................................................................................................................................... 2

*Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636 (D. Md. 2005)................................. 2

*Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030 (7th Cir. 1987) ........................................... 4

*Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582 (1983) ......................... 4

*Habitat Educ. Ctr., Inc. v. Bosworth*, 363 F. Supp. 2d 1090 (E.D. Wis. 2005).......................... 11

*Hall v. Sheahan*, 2001 U.S. Dist. LEXIS 1194 (N.D. Ill. Feb. 1, 2001)...................................... 12

*Kinneary v. City of New York*, 358 F. Supp. 2d 356 (S.D.N.Y. 2005) ......................................... 7

*Krumel v. City of Fremont*, No. 01 Civ. 259, 2002 U.S. Dist. LEXIS 6089 (D. Neb. Jan. 2, 2002) ...................................................................................................................................... 15

*Lane v. Pena*, 518 U.S. 187 (1986)....................................................................................... 4, 6, 8

*Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977).............................. 10

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) .............................................. 2

*Majocha v. Turner*, 166 F. Supp. 2d 316 (W.D. Pa. 2001)............................................................. 2

*McCarthy v. Madigan*, 112 S. Ct. 1081 (1992) ........................................................................... 12

*Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011).................................. 9

*Miller v. See, Inc.*, No. 11 Civ. 561, 2011 U.S. Dist. LEXIS 139197 (N.D. Ill. Dec. 2, 2011) ...... 2

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004).................................................. 14, 15

*Omar v. Mueller*, 501 F. Supp. 2d 636 (D.N.J. 2007) ................................................................. 14

*Patel v. Rodriguez*, No. 15 Civ. 486, 2015 U.S. Dist. LEXIS 140155 (N.D. Ill. Oct. 13, 2015) ... 9

*Patsy v. Board of Regents of Fla.*, 457 U.S. 496 (1982)............................................................... 12

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ........................................ 2

*Pierce v. District of Columbia*, No. 13 Civ. 0134, 2015 U.S. Dist. LEXIS 120971 (D.D.C. Sept. 11, 2015)....................................................................................................................................... 13

*Posner v. Adventist Healthcare, Inc.*, No. 08 Civ. 3306, 2010 U.S. Dist. LEXIS 63144 (D. Md. June 25, 2010) ............................................................................................................................... 2

*Romanelli v. Suliene*, 2008 U.S. Dist. LEXIS 2308 (W.D. Wis. Jan. 10, 2008) .......................... 12

*Sai v. Dep't of Homeland Security*, No. 14 Civ. 1876, 2015 U.S. Dist. LEXIS 167422 (D.D.C. Dec. 15, 2015) ............................................................................................................................... 10

*Saleem v. Keisler*, 520 F. Supp. 2d 1048 (W.D. Wis. 2007) ....................................................... 14

*Scherr v. Marriot Int'l, Inc.*, 833 F. Supp. 2d 945 (N.D. Ill. 2011) ......................................... 2, 3

*Shankar v. United States Dep't of Homeland Sec.*, No. 13 Civ. 01490, 2014 U.S. Dist. LEXIS 15014 (N.D. Cal. Feb. 6, 2014)........................................................................................................ 7

*Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687 (S.D. Ill. 2004).......................... 14

*Small v. Sullivan*, 820 F. Supp. 1098 (S.D. Ill. 1992).................................................................. 12

*Sutton v. Napolitano*, 986 F. Supp. 2d 948 (W.D. Wis. 2013) (Conley, J.)................................. 14

*Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382 (3d Cir. 2012)........................ 9

*Trudeau v. Federal Trade Comm'n.*, 456 F.3d 178 (D.C. Cir. 2006)............................................. 9

*Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 64 (D.D.C. 2014).................................................. 9

## Statutes

29 U.S.C. § 794 ................................................................... passim

42 U.S.C. § 2000d ...................................................................... 11

42 U.S.C. § 2000e-5 ................................................................... 11

5 U.S.C. § 702 ........................................................................ 1, 9

5 U.S.C. § 706 ........................................................................ 15

## Other Authorities

H.R. Rep. No. 1980, 79th Cong. 2d Sess., 276 (1946) .................. 10

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................ 14

## Regulations

38 C.F.R. § 15.160(a) ........................................................... 15, 16

38 C.F.R. § 15.160(a)(1) ....................................................... 15, 16

38 C.F.R. § 15.160(a)(1)(i) ..................................................... 15, 16

INTRODUCTION

Plaintiff Tasha McRaniels is a deaf individual who brings this action against Defendants, United States Department of Veterans Affairs and Robert A. McDonald, Secretary of Veterans Affairs (hereinafter collectively "the VA"). Plaintiff alleges that the VA violated her rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "RA") by refusing and failing to provide any auxiliary aids and services to ensure effective communication with her at William S. Middleton Memorial Veterans Hospital. The VA now moves to dismiss on the ground that the RA provides no private right of action against it and that Plaintiff has not exhausted certain administrative remedies. However, as set forth below, both the RA and the Administrative Procedures Act, 5 U.S.C. § 702 (the "APA") provide Plaintiff with a private right of action to redress the VA's violation of a mandatory duty imposed on it by law, and the Court should deny the VA's motion accordingly.

ARGUMENT

## I.       Plaintiff Sufficiently Alleges Standing

To have standing to pursue the forward-looking remedy of injunctive relief, a plaintiff must show a "sufficient likelihood" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). This is not a particularly high bar, such as would exist if Plaintiff were seeking a preliminary injunction.[1] Accordingly, a plaintiff does not have to show at the pleading stage that there is a certainty of ongoing or future injury, or even that such injury is more likely than not; what *Lyons* requires is a showing of a "sufficient likelihood." *Id.*

---

[1] *See Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011) (discussing the higher standing for a preliminary injunction).

Here, Plaintiff has alleged that the VA failed and refused to provide her with necessary auxiliary aids and services for her disability, and that the VA did so according to a policy or practice. *See, e.g.*, ECF Doc. 10 ¶¶ 23, 28. This is enough, at the pleading stage, to satisfy the requirement of pleading a sufficient likelihood of future injury. "Courts faced with claims of such a 'steadfast refusal' to accommodate deaf persons have found standing to pursue injunctive relief." *FHJC v. Catholic Managed Long Term Care, Inc., et al.*, No. 15 Civ. 8677, ECF Doc. 95 (S.D.N.Y. April 5, 2016) (*citing Majocha v. Turner*, 166 F. Supp. 2d 316, 325 (W.D. Pa. 2001); *Gillespie v. Dimensions Health Corp.*, 369 F. Supp. 2d 636, 645 (D. Md. 2005)).[2] Thus, it would not be speculative for the Court to conclude, at this stage, that there is a sufficient likelihood that the alleged discrimination may continue unless remedied through injunctive relief.

Additionally, while a plaintiff must allege a sufficient likelihood of future injury, "[t]hat is not to say, however, that concrete intentions to return to the location of injury are required to establish standing." *Scherr v. Marriot Int'l, Inc.*, 833 F. Supp. 2d 945, 951 (N.D. Ill. 2011). Courts in this Circuit have endorsed the "deterrent effect doctrine," which grants standing in disability discrimination cases "where a person has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation." *Id.* at 952 (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136–37 (9th Cir. 2002)); *see also Miller v. See, Inc.*, No. 11 Civ. 561, 2011 U.S. Dist. LEXIS 139197, at *4–5 (N.D. Ill. Dec. 2, 2011). This doctrine is "supported by the reasoning of Ninth, Eighth, and First Circuits," and "is gaining support." *Scherr*, 833 F. Supp. 2d at 952 (collecting cases); *see also*

---

[2] Defendants' reliance on *Freydel v. New York Hospital*, No. 00-CV-7108, 2000 U.S. App. LEXIS 31862 (2d Cir. Dec. 13, 2000) is misplaced, because it has been supplanted by the Second Circuit's subsequent holding in *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009); *see Posner v. Adventist Healthcare, Inc.*, No. 08 Civ. 3306, 2010 U.S. Dist. LEXIS 63144, at *14 (D. Md. June 25, 2010).

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188–89 (2d Cir. 2013) (also adopting the deterrent-effect doctrine). To satisfy this standing doctrine, the plaintiff must allege that she (1) is aware of existing barriers at the defendant's facility; (2) would return to the facility if the barriers were removed; and (3) intends to at least return to the area in which the facility is located. *Scherr*, 833 F. Supp. 2d at 953. Plaintiff has done exactly this in the Complaint. *See* ECF Doc. 10, ¶ 30 ("Plaintiff anticipates participating in her husband's medical care in the future, whether by choice or necessity, due to the proximity of Defendants' hospital to their home; but she is deterred from doing so due to the discrimination she has faced and expects to face in the future."). Thus, the deterrent effect doctrine provides another basis to find that Plaintiff has standing.

Furthermore, to the extent the Court considers evidence outside the pleadings, Plaintiff has indeed returned to the VA to participate in her husband's medical treatment. McRaniels Decl., ¶ 2. During this time, the VA provided her with a Video Remote Interpreting ("VRI") service that consistently malfunctioned so badly that it was essentially unusable. *Id.* ¶¶ 4–7. Despite Plaintiff's complaints about the ineffectiveness of the service, the VA did not provide a working VRI service or an onsite interpreter in order to ensure effective communication. *Id.* ¶ 8.

The VA's current policy, presented along with the Ludwig Declaration, thus does not serve to diminish Plaintiff's standing. First, it was not in effect during the time period relevant to the Complaint, when Plaintiff first visited the VA, which was in June of 2015. *Cf.* ECF Doc. 1, ¶ 14 (Complaint filed <u>December 15, 2015</u>); *with* ECF Doc. 10, ¶ 14 (Amended Complained filed <u>April 27, 2016</u>); *and* ECF Doc. 15-1 (VA policy dated <u>March 1, 2016</u> and implementing memorandum dated <u>June 10, 2016</u>). Second, it is evident that the new policy has *already* demonstrated its inadequacy by failing to provide necessary auxiliary aids and services to Plaintiff during her subsequent visits to the VA. Far from bolstering the VA's case, the drafting and subsequent failure

of its new policy and procedure demonstrates that the VA is likely to continue to fail to provide auxiliary aids and services, as required by law, absent injunctive relief. Therefore, the Court should decline the VA's invitation to dismiss the case for lack of standing.

## II.     Plaintiff Has a Private Right of Action

### A.     The Rehabilitation Act Provides an Implied Private Right of Action

"There can be no doubt that the Rehabilitation Act requires entities to reasonably accommodate persons with disabilities and that failure to do so amounts to discrimination under the act." *Estate of Estrada v. U.S. Dep't of Veterans Affairs*, No. 15 Civ. 364, 2016 U.S. Dist. LEXIS 6603, at *11 (N.D. Ohio Jan. 20, 2016) (denying motion to dismiss for failure to state a claim). The question posed in these proceedings is whether an aggrieved person may bring suit under the RA against an executive agency of the United States to redress such discrimination when the executive agency is conducting its own activities instead of acting as a provider of financial assistance.[3] The answer is yes.

The Rehabilitation Act is not a model of clarity. *See Lane v. Pena*, 518 U.S. 187, 196 (1986) ("The statutory scheme . . . is admittedly somewhat bewildering."). Basically, the RA contains both a prohibition on discrimination (Section 504) and a remedies provision (Section 505). Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be

---

[3] The distinction between an "express" right of action and an "implied" right of action is not particularly helpful here, because the Rehabilitation Act, by modeling its remedies section with reference to that of Title VI of the Civil Rights Act, contains only an implied right of action to begin with. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1038 (7th Cir. 1987) (citing *Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 593–97 (1983) ("the private cause of action under Title VI is one implied by the judiciary rather than expressly created by Congress")). Plaintiff's argument is that the RA confers, at the very least, an implied private right of action against federal agencies.

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. Section 505 provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794(a).

These two sections do not mirror each other. For example, § 504 prohibits discrimination by "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service," but *not* "by any Federal provider of such assistance." Nonetheless, § 505 extends a cause of action against "Federal provider[s] of such assistance," leaving the question of how and why the statute would extend a remedy against an entity to which it does not expressly apply. Conversely, § 504 prohibits discrimination by any "Executive agency," but § 505 does not mention that term. Based on this omission, the VA argues that the RA does not authorize suit against executive agencies conducting their own activities, even though it would authorize suit against executive agencies acting as providers of financial assistance. Def. Brief, ECF Doc. 14, p. 13. The VA's conclusion is not supported by Congress' intent in passing this law.

The natural and reasonable way to read § 504 and § 505 together is to conclude that the statute confers a private right of action against the federal government for disability discrimination. The reasoning in *Davis v. Astrue*, No. 06 Civ. 6108, 2011 U.S. Dist. LEXIS 92336, at *2–3 (N.D. Cal. Aug. 18, 2011) can guide the Court here. In *Astrue*, the defendant Social Security Administration made the exact same argument that the VA makes in the instant case: (1) that the RA confers no private right of action against an executive agency, and (2) that a plaintiff may only

seek relief under the APA. *Id.* at *2. The *Astrue* court rejected this argument, first noting that the Ninth Circuit had consistently authorized a private right of action under the RA "against both recipients of federal funds as well as the federal government itself" due to clear Congressional intent for this result:

> When Congress amended section 504 in 1978, it was aware . . . that the courts had interpreted section 504 to provide a private right of action for discrimination victims. "The fact that a comprehensive reexamination and significant amendment" of the Rehabilitation Act left section 504 intact as it previously existed and under which the federal courts had implied a private right of action "is itself evidence that Congress affirmatively intended to preserve that remedy." Congress amended the statute to prohibit discrimination "in any program or activity conducted by any Executive agency or by the United States Postal Service." Significantly, Congress did not make the amendment a new section; it did not even use a new sentence. Congress appended the new coverage to the end of the pre-existing sentence under which the private cause of action had been implied.

*Id.* at *8–9 (citing *Doe v. Attorney General*, 941 F.2d 780, 785 (9th Cir. 1991) (overruled on other grounds by *Lane v. Pena*, 518 U.S. 187, 191 (1996)). The court rejected the Social Security Administration's argument that, by not mentioning "Executive agencies," the remedies provision of § 505 did not authorize suit against them:

> Section 505(a)(2) . . . appears incomplete . . . by providing only that victims of discrimination either by the recipients or the federal providers of federal financial assistance have the Title VI remedies [i.e., an implied private right of action]. Section 505(a)(2) parallels the pre-1978 version of section 504's substantive prohibitions and does not include the language from section 504's contemporaneous amendment adding victims of discrimination by federal agency programs and activities to section 504's protection. This incongruity between section 504's substance and section 505's remedy appears to have occurred because the conference committee adopted the House's section 504 amendment and the Senate's section 505 version without adding section 504's additional coverage to section 505's remedy provision. Congress intended, however, to extend section 504's reach to ensure that no one would be exempt from its nondiscrimination provisions. Section 505's remedy therefore must be available to victims of discrimination by federal agencies in their programs and activities brought within section 504's umbrella by the 1978 amendment. Section 505(b) in fact

contemplates enforcement for all of the substantive rights in Title V (attorney's fee provision for "any action or proceeding to enforce or charge a violation of a provision of [Title V]"). . . . . Our analysis would not change, however, even if we did not conclude that section 505 must cover all violations of section 504. Congress was aware that section 504 provided an implied right of action. Yet Congress did not eliminate this remedy but rather enforced it by adding section 505. We see no congressional intent to abolish the private right of action and every intent to enforce it.

*Id.* at *11–13 (citing *Doe*, 941 F.2d at 787 n.13). The court concluded by observing that the overall construction of the RA indicates congressional intent to treat all government defendants equally:

Section 501 makes the federal government liable for employment discrimination, section 504 makes agencies liable for discrimination in their activities other than employment, and section 505[(b)] makes the government liable for attorney's fees. There is no contrary indication that Congress intended to exclude the federal government from its reach. The statute's internal approach is to prohibit discrimination against the handicapped by anyone and to install a unitary enforcement mechanism. The most reasonable interpretation from the language and structure of the statute is that Congress intended to make federal departments and agencies liable for discrimination against the handicapped in their programs and activities.

*Id.* at *13–14 (citing *Doe*, 941 F.2d at 791). Finally, the *Astrue* court noted that the availability of review under the APA did not foreclose suit under the RA. *See Astrue,* 2011 U.S. Dist. LEXIS 92336, at *18 ("Thus, even where the APA does provide the dominant paradigm for decision, that does not necessitate dismissal of the § 504 claim."). *See also Shankar v. United States Dep't of Homeland Sec.*, No. 13 Civ. 01490, 2014 U.S. Dist. LEXIS 15014, at *22 (N.D. Cal. Feb. 6, 2014) (citing *Astrue* as "explaining that § 504 authorizes a private right of action for injunctive or equitable relief against both recipients of federal funds as well as the federal government itself")

Defendant's cases on this point are distinguishable. The court in *Kinneary v. City of New York*, 358 F. Supp. 2d 356, 360 (S.D.N.Y. 2005) held only "that there is no implied private right of action in the Rehabilitation Act against the United States *when acting as a regulator*," and that

such relief was available only under the APA (emphasis added). The same is true of *Cousins v. Secretary of the U.S. Dept. of Transp.*, 880 F.2d 603, 605 (1st Cir. 1989) (agency acting in a *regulatory* capacity). However, as discussed below, Plaintiff is not challenging the VA's discretionary action as a regulator, but rather the VA's failure to provide auxiliary aids and services for her disability as required by the RA. When a private right of action "is necessary or *at least helpful* to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." *Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979). Thus, Plaintiff may bring her claims under the RA, as the statute contains an implied right of action against executive agencies.

Even though the text of the RA is "somewhat bewildering," *Pena*, 518 U.S. at 196, a court's task "is not to educate busy legislators in the niceties and details of scholarly draftsmanship, but rather to do [its] best to determine what message they intended to convey." *Id.* at 212 (Stevens, J., dissenting). Here, the message is clear that "Congress intended to make federal departments and agencies liable for discrimination against the handicapped in their programs and activities." *Astrue*, 011 U.S. Dist. LEXIS 92336, at *13. This Court should rely on the reasoning in *Astrue* and conclude that the RA contains an implied right of action against executive agencies such as the VA, regardless of whether they are conducting their own activities or acting as providers of financial assistance.

    B.   <u>Alternatively, Plaintiff is Entitled to Judicial Review Pursuant to the Administrative Procedures Act</u>

        1.  The APA Confers a Private Right of Action

Alternatively, if the Court determines that the Rehabilitation Act itself does not confer a private right of action, the Administrative Procedures Act does. The APA operates as a waiver of sovereign immunity allowing Plaintiff to enforce her rights under the RA.

Section 702 of the APA reads:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. This provision establishes a waiver of immunity that is not limited to suits brought pursuant to the APA, but rather to all suits against a federal agency. *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 775 (7th Cir. 2011) (*citing Trudeau v. Federal Trade Comm'n.*, 456 F.3d 178, 186 (D.C. Cir. 2006) (APA § 702 "waives sovereign immunity for an action in a court of the United States seeking relief other than money damages, not for an action brought under the APA") (formatting omitted)); *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 399 (3d Cir. 2012); *Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 64 (D.D.C. 2014) ("it is clear beyond cavil that a suit need not have been brought pursuant to the APA in order to receive the benefit of that statute's sovereign immunity waiver; indeed, the APA's waiver of sovereign immunity applies to any suit whether under the APA or not") (citing *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996)); *see also Patel v. Rodriguez*, No. 15 Civ. 486, 2015 U.S. Dist. LEXIS 140155, at *9 (N.D. Ill. Oct. 13, 2015) ("the APA is not a jurisdiction-conferring statute . . . and by implication it does not restrict jurisdiction the Court otherwise has") (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

The *Cousins* case, cited now by both parties, confirms that the APA allows Plaintiff to bring an action to enforce her rights under a different federal law:

> Section 504 clearly seems to apply to [the agency's] actions and omissions; it says that no "program or activity conducted by any Executive agency" can subject a handicapped person to discrimination. 29 U.S.C. § 794. And, as we have just said, the APA, in addition to telling courts to "hold unlawful and set aside" agency action that is "arbitrary" or "capricious," also tells them to set aside agency action that is "otherwise not in accordance with law" or is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A, C). These words are general in their meaning; they do not restrict the courts to consideration of the agency's own enabling statute.

*Cousins*, 880 F.2d at 608–09 (citing H.R. Rep. No. 1980, 79th Cong. 2d Sess., 276 (1946) ("The phrase "legal wrong" means such a wrong as is specified in [§ 706] . . . a complainant, in order to prevail, must show that the action is contrary to law in either substance or procedure. The law so made relevant is not only constitutional law but *any and all applicable law*."")); *accord Sai v. Dep't of Homeland Security*, No. 14 Civ. 1876, 2015 U.S. Dist. LEXIS 167422, at *32 (D.D.C. Dec. 15, 2015) ("the APA provides a cause of action to challenge final agency action that is not in accordance with the Rehabilitation Act").

## 2. Exhaustion Is Not Required

"Administrative exhaustion has *not* been mandated . . . for private claimants bringing suit under Section 504 [of the RA]." *Byers v. Rockford Mass Transit Dist.*, 635 F. Supp. 1387, 1389 (N.D. Ill. 1986) (emphasis in original) (referring to *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977)). The VA's arguments about the benefits of exhaustion, and how other courts have required exhaustion under different regulatory schemes promulgated by and applicable to different federal agencies (i.e., the DOJ regulations implicated in *Cooke v. Bureau of Prisons*, 926 F. Supp. 2d 720 (E.D.N.C. 2013)) miss the point. *See* Def. Brief, ECF Doc. 14, pp.

23–31; *id.* p. 31 (arguing that exhaustion "*should be*" required—but not that exhaustion is, in fact, required). As set forth below, exhaustion is not required in this case, because the statutes under which Plaintiff brings suit do not require it by their terms.

Under the APA, exhaustion is a prerequisite to judicial review "only when expressly required by statute or when an agency rule requires appeal before review. . . . Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' . . . ." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *see also Habitat Educ. Ctr., Inc. v. Bosworth*, 363 F. Supp. 2d 1090, 1107 (E.D. Wis. 2005) (citing *Darby*). Neither the RA nor the APA themselves require a plaintiff to exhaust administrative remedies before bringing suit. The VA has conspicuously failed to cite statutory language imposing such an obligation. As explained above, the RA merely incorporates the remedial scheme of Title VI of the Civil Rights Act, which does not contain an exhaustion requirement. *See* 29 U.S.C. § 794(a) (incorporating 42 U.S.C. § 2000d). This is in contrast to, for example, Title VII of the Civil Rights Act, which requires the filing of an administrative complaint with the Equal Employment Opportunity Commission before filing suit in federal court. *See* 42 U.S.C. § 2000e-5. The VA has not pointed to a *statutory* requirement applicable to the Plaintiff that requires the Plaintiff to follow any administrative procedures before filing suit to enforce her rights established by the RA.[4] Therefore, this Court is not free to read an exhaustion requirement into a statute where none actually exists.

---

[4] Indeed, the VA readily recognizes that the regulations apply to the VA, and not to any potential claimants or plaintiffs. *See* Def. Brief, ECF Doc. 14, p. 23 (noting that the regulations apply to the VA and "require the VA" to take certain actions); p. 28 (noting other obligations that the regulations impose upon the VA).

"[T]he initial question whether exhaustion is required should be answered by reference to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent." *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 501–02 (1982). This is to say that "exhaustion is a *statutory* issue and the dispositive word on the matter belongs to Congress." *Id.* at 518 (White, J., concurring) (emphasis added). The regulations that the VA cites, in addition to saying nothing about what is required of a plaintiff, were not promulgated by Congress; all Congress did in the RA was state that "[t]he head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section." 29 U.S.C. § 794. Congress did not require exhaustion by aggrieved disabled individuals.

Moreover, "exhaustion is less important when the action under review does not involve exercise of the agency's discretionary power or application of its own special expertise." *Small v. Sullivan*, 820 F. Supp. 1098, 1106 (S.D. Ill. 1992) (citing *McCarthy v. Madigan*, 112 S. Ct. 1081, 1086 (1992) (superseded by statute). As set forth at greater length below, the conduct that Plaintiff challenges in this lawsuit involved neither the VA's discretionary power nor any issue that could rightly be considered within the VA's "own special expertise" as the agency responsible for overseeing veterans' affairs. Accordingly, administrative exhaustion is neither required nor indicated in this case.

Even if exhaustion were required or indicated, it is not undisputed (as the VA argues) that Plaintiff failed to exhaust remedies that were actually available to her. A grievance procedure that is not "made known" is not an "available" administrative remedy, thus excusing any exhaustion requirement that may apply. *Hall v. Sheahan*, 2001 U.S. Dist. LEXIS 1194, at *4 (N.D. Ill. Feb. 1, 2001); *see also Romanelli v. Suliene*, 2008 U.S. Dist. LEXIS 2308, at *15 (W.D. Wis. Jan. 10, 2008) (following *Hall*). In this case, Plaintiff alleges that she is a deaf individual who

communicates primarily in ASL and who has difficulty communicating in English. ECF Doc. 10, ¶¶ 11–12. Accordingly, she would have required an interpreter in the first instance in order to understand whether the VA had a written complaint resolution procedure; the extent of that procedure; and how to comply with that procedure. McRaniels Decl., ¶ 11. The VA, however, did not supply her with an interpreter at any point. Plaintiff should not be forced to comply with a procedure dealing with the resolution of disability discrimination complaints when she could not have understood and utilized that procedure in the first instance *because of her disability*. Imposing such a burden on her would be "truly baffling as a matter of law and logic," because it would require an individual "with known communications-related difficulties" to overcome those difficulties—without the accommodations to which she is entitled—in order to seek redress for the failure to accommodate. *See Pierce v. District of Columbia*, No. 13 Civ. 0134, 2015 U.S. Dist. LEXIS 120971, at *50 (D.D.C. Sept. 11, 2015). Here, Plaintiff communicated her need for auxiliary aids and services, and her complaint with the VA's failure to provide them, to the extent she was capable of doing. *See* McRaniels Decl., ¶¶ 10, 12. The law does not require her to do anything more.

### 3. Plaintiff Is Challenging Final Agency Action

Plaintiff is challenging final agency action that violates the RA. The VA argues that, because she did not file and pursue an administrative complaint, Plaintiff is not challenging "final agency action" as contemplated by the APA, and that the case must therefore be dismissed. *E.g.* Def. Brief, ECF Doc. 14, p. 23. The VA is incorrect, because when agency action is legally

required (as opposed to discretionary), the failure to take such action constitutes a reviewable final action under the APA.[5]

The APA specifically authorizes a claim challenging an agency's failure to act when action is required by law. For purposes of APA § 702, "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." *Id.* § 551(13) (emphasis added); *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 119 (D.D.C. 2015) ("A person adversely affected by agency action, including failure to act, is entitled to judicial review under the APA"); *Del Monte Fresh Produce NA, Inc. v. US*, 706 F. Supp. 2d 116, 117 (D.D.C. 2010); *Omar v. Mueller*, 501 F. Supp. 2d 636, 640 (D.N.J. 2007). A failure to act claim under the APA involves identifying a "discrete action" that is "legally required," but that the agency nonetheless failed to do. *Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 699 (S.D. Ill. 2004) (a plaintiff may challenge a failure to act "where there was a clear, mandatory, non-discretionary duty to act") (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004)). When action is required by law, a failure to act constitutes "final agency action" subject to judicial review. *E.g. Fort Sill Apache Tribe*, 103 F. Supp at 121; *Del Monte*, 706 F. Supp. 2d at 117; *see also Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1052 (W.D. Wis. 2007) ("an exercise of jurisdiction over plaintiff's claim is not contingent on whether an 'action' is a final decision or includes interim actions taken along the way . . . [because] plaintiff is not

---

[5] In any event, even if Plaintiff were challenging agency action that was not "final," it would not deprive the Court of jurisdiction and necessitate dismissing the case pursuant to Fed. R. Civ. P. 12(b)(1). *Sutton v. Napolitano*, 986 F. Supp. 2d 948, 961 (W.D. Wis. 2013) (Conley, J.) ("the APA's final agency action requirement is not jurisdictional in nature" and, therefore, "even if the court were to infer by negative implication that agency conduct not amounting to final agency action is not 'reviewable,' that inference would not deprive a federal court of any jurisdiction it otherwise has") (formatting omitted) (*citing Trudeau*, 456 F.3d at 184)).

challenging any interim action of defendants, only their failure to act.").[6] Faced with a failure to act claim, a court may grant relief by holding unlawful agency action found to be not in accordance with law, as well as by compelling agency action unlawfully withheld. 5 U.S.C. § 706.

The VA's failure to take legally required steps to ensure effective communication with Plaintiff violates the RA, and the APA allows Plaintiff to challenge that failure. The RA provides that each executive agency "shall promulgate such regulations as may be necessary to carry out" its objectives. 29 U.S.C. § 794(a) (entitled "Promulgation of Rules and Regulations"). The regulations applicable to the VA establish clear, nondiscretionary duties with respect to its interactions with disabled individuals,[7] as follows:

> "The agency *shall* take appropriate steps to ensure effective communication with applicants, participants, personnel of other Federal entities, and members of the public." 38 C.F.R. § 15.160(a) (emphasis added).

> "The agency *shall* furnish appropriate auxiliary aids where necessary to afford an individual with handicaps an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency." 38 C.F.R. § 15.160(a)(1) (emphasis added).

> "In determining what type of auxiliary aid is necessary, the agency *shall* give primary consideration to the requests of the individual with handicaps." 38 C.F.R. § 15.160(a)(1)(i) (emphasis added).

---

[6] This is in contrast to a "programmatic attack" against an agency's stated policies or practices, which is not considered "discrete" and is therefore not allowed. *Norton*, 542 U.S. at 64. *Krumel v. City of Fremont*, No. 01 Civ. 259, 2002 U.S. Dist. LEXIS 6089 (D. Neb. Jan. 2, 2002), cited by the VA, involved such a programmatic challenge, and is distinguishable for that reason. *See id.* at *2. ("The crux of Krumel's Amended Complaint is that the federal defendants are charged with mailbox placement, and that the boxes' placement in close proximity to the sidewalks in Fremont has a discriminatory impact on him because of his disabilities, which include blindness.").

[7] While the regulations do not themselves establish a cause of action, they provide the substantive requirements to which the VA must adhere. Again, the RA and/or the APA establish the cause of action.

The repeated use of the word "shall" indicates that this is not a discretionary duty left to agency expertise, but rather a mandatory requirement imposed upon the VA. *See Fort Sill Apache Tribe*, 103 F. Supp. 3d at 120 (noting that applicable regulations containing the word "shall" established a "mandatory, nondiscretionary duty" upon the agency).

Even insofar as some of these legal requirements involve the exercise of a certain degree of discretion—i.e., deciding what is an "appropriate" auxiliary aid and service—Plaintiff's Complaint alleges that the VA completely failed in its duty to undertake that consideration. Plaintiff alleges that the VA took no steps at all to ensure effective communication with her, in violation of the mandatory duty imposed by 38 C.F.R. § 15.160(a). *See* ECF Doc. 10, ¶¶ 20–24. She alleges that the VA provided no auxiliary aids and services to her at all, let alone "appropriate" auxiliary aids and services, in violation of the mandatory duty imposed by 38 C.F.R. § 15.160(a)(1). *See id.* ¶ 19. Finally, Plaintiff alleges that the VA gave no consideration at all to her request for an in-person ASL interpreter, let alone "primary" consideration, in violation of the mandatory duty imposed by 38 C.F.R. § 15.160(a)(1)(i). *See id.* ¶¶ 15–17.

Again, Plaintiff is challenging the VA's unlawful denial of auxiliary aids and services for her disability. Plaintiff alleges that she has suffered legal wrong because of agency action (i.e., the failure to act) within the meaning of a relevant statute (i.e., the RA, which applies to the VA as an executive agency). Plaintiff does not challenge the agency's exercise of discretion—Plaintiff was entitled to appropriate auxiliary aids and services at the moment she needed them, not after the completion of a discretionary administrative decision-making process. The VA's failure to take any steps to provide them as required violates the law, and the APA allows this Court to address that violation. Accordingly, the Court should deny the VA's motion to dismiss on the alternate

ground that the APA allows Plaintiff to bring suit to seek redress for the VA's violations of the

RA.

CONCLUSION

The Court should deny the VA's motion to dismiss.


Respectfully submitted,

EISENBERG & BAUM, LLP

By: /s/ Andrew Rozynski, Esq.
Andrew Rozynski, Esq.
24 Union Square East, Fourth Floor
New York, NY 10003
arozynski@eandblaw.com

*Attorneys for Plaintiff*