IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TASHA MCRANIELS,

    Plaintiff,

v.                                          Case No. 15-cv-802-wmc

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS and ROBERT A.
MCDONALD, SECERTARY OF VETERANS
AFFAIRS,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) OR 12(b)(6),
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants, United States Department of Veteran Affairs ("VA") and Robert A. McDonald, Secretary of Veterans Affairs ("Defendants"), by their attorney, John W. Vaudreuil, United States Attorney for the Western District of Wisconsin, by Assistant United States Attorney Barbara L. Oswald, submit this reply in support of their Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), or in the Alternative, for Summary Judgment (ECF No. 13).

I.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1) BECAUSE SHE LACKS STANDING

In her response, Plaintiff argues that the VA's current policy regarding auxiliary aids for the hearing impaired does not diminish her standing because it was not in

effect during the time period relevant to the Complaint. Pl.'s Resp. at 3, ECF No. 19. As discussed in Defendants' initial brief, to have standing for injunctive relief, Plaintiff must demonstrate a likelihood of *future* harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (Past wrongs do not by themselves amount to a real and immediate threat of injury necessary to establish standing). *See also* Defs.' Br. at 2-3, ECF No. 14. Thus, given the VA's current policy, the alleged absence of an effective policy in the past does not cure Plaintiff's lack of standing.

Moreover, while Plaintiff argues the VA's current policy is inadequate, the evidence demonstrates otherwise. Unlike in the cases cited by Plaintiff in her brief, the VA did not steadfastly refuse to provide Plaintiff with an interpreter or other auxiliary aids. As Plaintiff's own evidence demonstrates, in a recent visit to the VA Hospital, staff was using an auxiliary aid, i.e., written notes, to communicate and Plaintiff was able to respond to that communication in writing. Declaration of Tasha McRaniels ("McRaniels' Decl."), July 11, 2016, ¶ 12, Ex. A, ECF No. 21-1. Further, the VA staff informed her that a virtual interpreter (also known as "VRI") would be used in order to provide her with an interpreter in the quickest way possible. *Id.* They also informed her that while they do not have a live interpreter on staff, they would work on a schedule to provide live interpreters to coincide with the doctor's schedule to keep Plaintiff updated on the medical situation. *Id.*

Plaintiff disingenuously informs the Court that when VA staff initially tried to use the VRI, they had trouble getting it to work properly. McRaniels' Decl., ¶ 1, ECF No. 21-1. Plaintiff fails to mention that the issues were resolved after 90 minutes and

2

she was able to meet with treatment providers on two occasions on that day, during which the VRI equipment worked and Plaintiff did not report any problems. *Id.* at ¶¶ 4-5; Second Declaration of Jane Ludwig ("Second Ludwig Decl."), July 22, 2016, ¶ 6; Declaration of Charity Frey ("Frey Decl."), July 22, 2016, ¶ 3. She also fails to mention that the VRI equipment was available for her use on other occasions should she want it. Second Ludwig Decl., ¶ 9; Frey Decl., ¶ 4. The VA staff responsible for setting up the VRI was not notified of any problems after the initial 90 minutes and would have worked on resolving any issues had they been informed of any. Second Ludwig Decl., ¶ 9; Frey Decl., ¶ 4. Most significantly, during Plaintiff's recent visits to the Madison VA Hospital, the VA did provide her with a live interpreter on two occasions when Plaintiff's schedule could be coordinated with that of the treatment providers and an interpreter. Second Ludwig Decl., ¶ 8. The VA even arranged for an interpreter to come to her home, although no one at Plaintiff's residence opened the door on that date. *Id.*, ¶ 8.

In summary then, the evidence demonstrates that the VA has updated its policy regarding interpreters. Ludwig Decl., ¶¶ 8-9, ECF No. 15. The VA Hospital has a contract with a vendor for sign language interpreters and has access to alternative vendors, if necessary. *Id.* at ¶ 12. It procures an in-person interpreter when an interpreter is available to meet with the individual. Second Ludwig Decl., ¶ 5. It has purchased and installed VRI software and worked through IT issues related to that software. Ludwig Decl., ¶ 13, ECF No. 15; Second Ludwig Decl., ¶¶ 6, 9; Frey Decl., ¶ 3. It has the ability to use written notes when the VRI and a live interpreter are not

3

available. Second Ludwig Decl., ¶¶ 4-9. Moreover, the VA has utilized each of these options with Plaintiff. Ludwig Decl., ¶¶ 8-9, ECF No. 15; Second Ludwig Decl., ¶¶ 4-9; Frey Decl., ¶¶ 3-4. Other than alleging generally that she was not provided with effective communication, Plaintiff fails to demonstrate that the VA's current policies and practices did not actually provide her with effective communication. Thus, Plaintiff cannot show a demonstrated probability that she will be unlawfully denied effective communication in the future.

Plaintiff appears to be arguing that she has standing simply because the VA is unable to provide an interpreter whenever she requests one. Plaintiff cites to no authority that puts such a requirement on the VA. The Rehabilitation Act does not require the impossible. The VA is merely required to provide auxiliary aids when necessary in order to provide effective communication for an individual with a disability, to allow that individual to participate to the same extent as a person without such disability. 38 C.F.R. § 15.160. Those aids can include written notes, VRI or a live interpreter. 38 C.F.R. § 15.103. As noted in Defendants' initial brief, whether a particular aid is adequate to provide equal access depends on the context, including the nature, significance, and complexity of the communication. *Liese v. Indian River Co. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012). The regulations implementing the Rehabilitation Act do *not* require the VA to provide whatever type of aid is requested, but instead only requires the agency to give primary consideration to that request.

The case in point is a perfect example of why the law is so written. The VA Hospital's access to sign language interpreters – and their ability to use one for

4

communication between Plaintiff and her family member's treatment providers -- is dependent on the availability and schedule of not only an interpreter, but also Plaintiff and any necessary treatment providers.[1]  Second Ludwig Decl., ¶ 5.  To fill the gaps, VA staff has employed written notes and VRI in communicating with Plaintiff.  *Id.* at ¶¶ 6-7.  Short of the VA employing sign language interpreters on their staff to be available twenty-four hours a day, seven days a week, it is unclear what else the VA can do beyond what it has already done.[2]

Because Plaintiff is unable to demonstrate that there is a real and immediate threat of future injury, she lacks standing to bring claims for declaratory and injunctive relief.  Her claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

II.   PLAINTIFF'S REHABILITATION ACT CLAIM SHOULD BE DISMISSED BECAUSE SHE FAILS TO DEMONSTRATE THAT A PRIVATE RIGHT OF ACTION EXISTS UNDER § 504 TO BRING SUIT

Plaintiff has the burden of demonstrating that Congress intended to make a private right of action available.  *See Stew Farm, Ltd., v. Natural Resources Conservation Service,* 767 F.3d 554, 562 (6th Cir. 2014)(citing *Suter v. Artist M.,* 503 U.S. 347, 363 (1992)).  In her response, Plaintiff appears to concede that § 504 does not provide an

---

[1] VA medical providers are not necessarily available to talk to a patient or family member whenever that patient or family member wishes to discuss the patient's condition.  Second Ludwig Decl., ¶ 5.

[2] No doubt Plaintiff expects the VA to have sign language interpreters on staff, available in person at all times.  Such an expectation is not reasonable given that in the last fifteen years, the VA Hospital has had requests for a sign language interpreter from only two individuals, one of whom is Plaintiff.  Second Ludwig Decl., ¶ 4.  Thus, the VA does not have enough demand to provide sufficient work for a pool of on-staff sign language interpreters.  *Id.*

express right of action. Pl.'s Br. at 4-5, ECF No. 19. Instead, she argues that an implied right of action exists. *Id.* In support of her argument, she relies on one unpublished Northern District of California decision, *Davis v. Astrue,* Case Nos. C-06-6108 EMC and C-09—980 EMC, 2011 WL 3651064 (N.D. Cal. Aug. 18, 2011). In *Astrue*, the court merely recycled extensive language from *Doe v. Attorney General*, 941 F.2d 780 (9th Cir. 1991) to find that a private right of action against federal agencies is implied in § 504. *Astrue,* 2011 3651064, *3-5. The *Astrue* court's reliance on *Doe*, and Plaintiff's corresponding reliance on *Astrue,* is flawed because *Doe's* holding was ultimately overruled by the Supreme Court in *Lane v. Pena*, 518 U.S. 187 (1996). While acknowledging that *Doe* was overruled by *Lane*, the *Astrue* court nevertheless relied on the same language and reasoning that led the *Doe* court to its mistaken conclusions. *Astrue,* 2011 WL 3651064 at * 3-5. Plaintiff relies on the same language and mistaken conclusions in her brief. Pl.'s Br. at 5-7, ECF No. 19.

In *Doe v. Attorney General*, the Ninth Circuit recognized that a private right of action against the United States cannot be implied unless Congress unequivocally expresses its intent to create such a right. *Doe*, 941 F.2d at 789. The court then went on to conclude that "Congress unequivocally expressed its intent in [§ 504's] language and history to provide handicapped victims of government discrimination a private right of action for damages against the government discriminator." *Id.* In reaching its conclusion, the court repeatedly stressed that the language of § 504 and § 505, and the legislative history of those two sections, demonstrated that "Congress intended "to put the federal government on an equal footing with everyone else so that enforcement of

6

the section would have no gaps." *Id.* at 794-95. The court went on to add, "Congress stressed that this footing included a private right of action for damages." *Id.* In *Lane v. Pena,* which was decided after *Doe,* the Supreme Court reached exactly the opposite conclusion in looking at the language of §§ 504 and 505, clearly stating that "Section 505(a)(2) itself indicated congressional intent to treat federal Executive agencies *differently* from other § 504(a) defendants for purposes of remedies." *Id.* at 193 (emphasis in the original). Thus, the reasoning in *Doe* has been rejected by the Supreme Court.

In *Astrue*, the district court paid lip service to the fact that the *Doe* decision was no longer valid after *Lane*, but pointed out that *Lane* did not foreclose the possibility that there could be a private right of action under § 504 for injunctive or equitable relief. *Astrue,* 2011 WL 3651064 at * 3. In *Lane*, however, the defendants did not appeal a grant of injunctive relief and therefore the question before the Court was limited to monetary damages. *Lane,* 518 U.S. at 190. The *Astrue* court did not explain why the Court's reasoning in *Lane* would have been inapplicable to injunctive or equitable relief. Instead, it merely cited to two other Northern District of California cases which found, without discussion, that equitable remedies were available under § 504. 2011 WL 3651064 at * 3. The *Astrue* court then went on to cite a footnote in *Doe* in which the Ninth Circuit recognized that there was an "incongruity" between the federal entities included in § 504 and those included in § 505, yet ultimately concluded that the remedies in § 505 must be available to victims of discrimination by federal agencies conducting their programs and activities. *Id.*, citing *Doe,* 941 F.2d at 787 n.13. Plaintiff

7

repeats that cited footnote from *Doe*. Pl.'s Br. at 6-7. In doing so, however, Plaintiff omits the final sentence of the footnote, in which the *Doe* court states, "As we explain later in our opinion, there is no evidence that Congress intended to distinguish between the remedy for the new element of section 504 [adding executive agencies] and the remedy for other violations of the section." As already discussed at length above and in Defendants' initial brief, that conclusion was rejected in *Lane. See Lane,* 518 U.S. at 193.

In contrast to *Astrue*, other courts have found no private right action under § 504, consistent with *Lane*. In *Cousins v. Sec. of Dep't of Transp.,* 880 F.2d 603, 605 (1st Cir. 1989), decided prior to *Lane,* the First Circuit Court of Appeals en banc rejected an argument for a private right of action against a federal agency, recognizing that the Rehabilitation Act does not provide for a right of action against Executive agencies. The Fourth Circuit Court of Appeals found likewise in *Clark v. Skinner,* 937 F.2d 123 (4th Cir. 1991). Other courts are in accord. *See SAI v. Dep't of Homeland Security,* 149 F. Supp. 3d 99, 112-15 (D.D.C. Dec. 15, 2015); *Kinneary v. City of New York,* 358 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2005); *Krumel v. City of Fremont,* No. 01-cv-259, 2002 WL 808633, *4 n.4 (D. Neb. Jan. 2, 2002). Plaintiff dismisses *Cousins* and *Clark* on the grounds that those cases involved an agency acting in its role as a regulator. Pl.'s Br. at 7-8. Plaintiff fails to explain why that distinction matters for purpose of whether a right of action can be implied from the statute.

As discussed in Defendants' initial brief, Congress's choice in how it amended § 504 and created § 505 in 1978 is notable because its inclusion of "executive agencies" in § 504 was done *simultaneously* with the creation of the remedies provisions in § 505, yet

8

Congress chose to exclude executive agencies in § 505(a)(2). *See* Pub. L. 63-102, §§ 119 and 120. That omission is presumed to be intentional. *Lane,* 518 U.S. at 192-93. Further, in making subsequent amendments to §§ 504 and 505, including those after *Lane* was decided, Congress did not amend § 505(a) to make its remedies available to executive agencies.

Because the language of §§ 504 and 505 does not display any intent by Congress to make a private remedy available against federal agencies conducting their programs, no private right of action can be implied. *See Alexander v. Sandoval,* 532 U.S. 275, 286 (2001). (Courts should not imply a cause of action in the absence of evidence that Congress intended to create not just a private right, but also a private remedy.) *See also, SAI v. Dep't of Homeland Security,* 149 F. Supp. 3d 99, 113 (D. D.C. Dec. 15, 2015)("Congress unambiguously intended to create a right to be free from disability discrimination in federal programs and activities… But there is relatively little evidence that Congress intended to create a private cause of action under the Rehabilitation Act to enforce that right."). Plaintiff fails to meet her burden of demonstrating Congress intended a private right of action under § 505 against an executive agency such as the VA.

III. EVEN IF A PRIVATE RIGHT OF ACTION EXISTS UNDER § 504, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

In her brief, Plaintiff argues at that exhaustion is not required under the APA. Plaintiff misreads Defendants' argument about exhaustion. It is Defendants' position that exhaustion of the administrative remedies set forth in 38 C.F.R. § 15.170 should be

9

required before a plaintiff can bring an action *under § 504.* Defs.' Br. at 23-32, ECF No. 14. Plaintiff's arguments regarding exhaustion are directed at a claim under the APA and are therefore not responsive to Defendants' arguments as to administrative exhaustion for a § 504 claim.

In this case, Plaintiff does not assert that she complied with the administrative complaint process but instead argues that because the agency did not provide her with an interpreter to inform her of the administrative remedy process, an administrative remedy was not available to her. Pl.'s Br. at 13. In support of this argument, Plaintiff asserts that the VA "did not supply her with an interpreter at any point." This statement is simply not true. The VA has provided Plaintiff with an interpreter on multiple occasions, one of which was within the 180-day window for a complaint regarding the allegations in the Complaint. Decl. of Ludwig, ¶ 17, ECF No. 15; Second Decl. of Ludwig, ¶ 8.

Ignorance of the law is usually not viewed as an excuse for failing to comply with the law. *See Googerdy v. North Carolina Ag. and Tech. State Univ.,* 368 F. Supp. 2d 618, 628 (M.D. N.C. Aug. 24, 2005) ("To give credit to Plaintiff's alleged lack of knowledge [of administrative procedures] would be to throw out the venerable principle that ignorance of the law is no excuse."). Plaintiff cites to two unpublished cases that hold that in the context of the Prisoner Litigation Reform Act, administrative remedies are not available when an inmate is not informed of grievance procedures. Pl.'s Br. at 13, ECF No. 19. Plaintiff cites no authority that extends the holding of those

cases beyond incarcerated individuals (*i.e.,* individuals with limited access to legal research, etc.) or outside the context of the PLRA. *Id.*

In addition, it is clear why an interpreter would be required in order for Plaintiff to be aware of the VA's administrative remedy process. Plaintiff's own declaration demonstrates that she is able to read and write English to the extent necessary for basic communication. Therefore, she would not have needed an interpreter to obtain information about filing an administrative complaint.

Plaintiff's Rehabilitation Act claim should thus be denied for failure to exhaust her administrative remedies.

IV. PLAINTIFF'S APA CLAIM SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) BECAUSE SHE FAILS TO IDENTIFY A FINAL AGENCY ACTION THAT WAS REQUIRED BY LAW

Plaintiff argues that she has stated an APA claim because she has alleged a failure to act on the part of the VA. However, as discussed in Defendants' initial brief, to state a claim Plaintiff must first identify an "agency action" as defined in 5 U.S.C. § 551(13) (*i.e.,* rule, order, license, sanction, relief, or the equivalent or denial thereof), *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004). Even if alleging a failure to act by the agency, Plaintiff must identify the equivalent of one of the defined agency actions, such as a failure to issue a rule within a prescribed time. *Id.* Plaintiff 's allegations that the VA failed to provide her with an interpreter when she requested one does not rise to the level of the equivalent of a failure to issue an rule, order, license, etc. It also cannot be construed as a "determination of rights and obligations" by "rule, order, license, sanction, relief, or similar action" or a "definitive statement of the

11

agency's position" as required for APA review. *See Bennett v. Spear*, 520 U.S. at 177.  It also cannot be construed as the consummation of an agency decision-making process, *See Id.*; *Atchison, Topeka & Santa Fe Ry. Co. v. Pena*, 44 F.3d at 441.

Finally, contrary to Plaintiff's arguments, the agency does have discretion in how and when it provides auxiliary aids.  As discussed above, the regulations require the agency to furnish "appropriate" auxiliary aids "when necessary" to afford an individual an equal opportunity to participate in benefits, programs, or activities of the agency.  38 C.F.R. § 15.160(a)(1).  The agency must give primary consideration to the requests of the individual, but it is within the agency's discretion to determine when, and what type, auxiliary aid is necessary.  38 C.F.R. §15.160(a)(1)(i).  The agency is not required to take any action that would result in a "fundamental alteration in the nature of a program or activity" or in "undue financial and administrative burdens."  *Id.*  The provision of such aids then is not a ministerial, non-discretionary act and Plaintiff fails to state an APA claim.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated this 25th day of July, 2016.

        Respectfully submitted,

        JOHN W. VAUDREUIL
        United States Attorney

        By:
           *s/ Barbara L. Oswald*
        BARBARA L. OSWALD
        Assistant United States Attorney
        Unites States Attorney's Office
        Western District of Wisconsin
        222 West Washington Avenue, Suite 700
        Madison, WI 53703
        (608) 264-5158
        (608) 264-5724 (fax)
        barbara.oswald@usdoj.gov

<u>Of Counsel</u>

Liliana K. Barry
Staff Attorney
U.S. Department of Veterans Affairs
(414) 902-5047
(414) 902-9406 (fax)
liliana.barry@va.gov