IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TASHA McRANIELS,

                        Plaintiff,                        OPINION AND ORDER

v.

                                                         15-cv-802-wmc

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS and DAVID SHULKIN,
Secretary of Veterans Affairs,

                        Defendants.

---

Plaintiff Tasha McRaniels is deaf and communicates primarily in American Sign Language ("ASL"). During her husband's treatment at William S. Middleton Memorial Veterans Hospital, she contends that the United States Department of Veterans Affairs discriminated against her by failing to provide auxiliary aids and service to accommodate her disability in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, despite her repeated requests for assistance. Plaintiff also asserts a claim for violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, based on defendants' failure to carry out a required act. Pending before the court is defendants' motion to dismiss for both a lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (Dkt. #13.) The court will grant defendants' motion to dismiss plaintiff's APA claim because the actions involved were discretionary in nature, but will deny the motion in all other respects for the reasons that follow.

ALLEGATIONS OF FACT[1]

As a profoundly deaf individual, plaintiff Tasha McRaniels primarily relies on ASL. Within the meaning of the Rehabilitation Act, there is no dispute that she is substantially limited in the major life activities of hearing and speaking. Because the United States Department of Veterans Affairs is an Executive Agency of the United States of America, it is subject to the requirements of the Rehabilitation Act and the APA. Plaintiff also named defendant Robert A. McDonald, who, at all times relevant to the complaint, was the United States Secretary of Veterans Affairs. Obviously, defendant Secretary McDonald is being sued in his official capacity only. Therefore, the court will substitute McDonald with the current Secretary of Veteran Affairs, David Shulkin, as now reflected in the caption above. Defendants operate William S. Middleton Memorial Veterans Hospital in Madison, Wisconsin.

Upon information and belief, the hospital does not have or utilize Video Remote Interpreting ("VRI") services for deaf individuals. While the hospital provides foreign language interpretation services, it does not provide ASL interpretation services.

On or about June 12, 2015, plaintiff's husband, a veteran of the United States armed forces, was transferred from another hospital to Middleton Memorial for medical treatment. With plaintiff accompanying him to the hospital, he requested a sign language interpreter for plaintiff. The hospital nevertheless refused this request on the basis that the plaintiff was neither a veteran nor a patient. The hospital also failed to

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

provide her any other auxiliary aids or services to facilitate better communication in light of plaintiff's disabilities. As a result, throughout her husband's hospitalization, up to and including his discharge on June 15, plaintiff had little to no understanding of her husband's medical condition, tests, medication, or the instructions on follow-up care.

OPINION

Defendants move to dismiss plaintiff's claims for lack of standing under Fed. R. Civ. P. 12(b)(1). In the alternative, they seek dismissal for failure to state a claim under Rule 12(b)(6). The court will first turn to the subject matter jurisdiction challenge, as it must.

I. Standing

Article III of the Constitution confines federal courts' jurisdiction to the resolution of "cases and controversies." *Davis v. Federal Election Commission*, 554 U.S. 724, 732 (2008). One element of this requirement is that of standing -- "the personal interest that must exist at the commencement of the litigation." *Id.* (internal citation omitted). "Because standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III, [a court] must consider [that] jurisdictional issue even if the parties have not raised it." *Shirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) (internal citation omitted).

To establish standing a plaintiff must have:

> (1) an 'injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) a

> causal connection between the injury and the conduct complained of, that is, the injury is fairly traceable to the challenged action of the defendant, not the result of the 'independent action of some third party not before the court'; and (3) a favorable decision likely will redress the injury.

*O'Sullivan v. City of Chi.*, 396 F.3d 843, 854 (7th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To meet this burden and to survive a challenge to standing under Rule 12(b)(1), a plaintiff must plead sufficient factual allegations, taken as true, that plausibly suggest each of these elements." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (internal citation and quotation marks omitted).

Here, plaintiff is pursuing declaratory and injunctive relief.[2] To do so, plaintiff cannot merely rely on a past injury; instead, she must allege that she is in immediate danger of sustaining a *future* injury. *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) ("When the plaintiff applies for prospective relief against a harm not yet suffered—or one [s]he believes [s]he will suffer again—[plaintiff] must establish that [s]he 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct [,] and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical.'" (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983))).

Plaintiff alleges that she "anticipates participating in her husband's care in the future but she is deterred from doing so due to the discrimination she faced and expects

---

[2] Monetary damages against the federal government are not available for violations of the Rehabilitation Act or the APA. *See Lane v. Pena*, 518 U.S. 187, 193 (1996) (holding that Congress did not waive the Federal Government's sovereign immunity in enacting the Rehabilitation Act); *Depot of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (holding that the United States has not waived its sovereign immunity when it comes to APA claims seeking money damages).

4

to face in the future." (Am Compl. (dkt. #10) ¶ 30.) However, defendants contend that this allegation is insufficient to "*demonstrate* a real and immediate threat of future discrimination by the VA." (Defs.' Opening Br. (dkt. #14) 12.) Critically, however, that is not an accurate description of the standard, at least to overcome a facial challenge on a motion to dismiss. Instead, plaintiff must simply "plausibly suggest" a future injury. *Berger*, 843 F.3d at 289.

Here, plaintiff has done just that, alleging that: she experienced alleged discrimination because of a disability; she anticipates returning to the VA for future care of her spouse; and she has reason to expect the same discrimination going forward. She further alleges the experience alone has deterred her from participating in her husband's care going forward out of concern of future discrimination. This latter allegation alone may be sufficient to overcome any facial challenge to her standing. *See Scherr v. Marriot Int'l, Inc.*, 833 F. Supp. 2d 945, 952 (N.D. Ill. 2011) (noting and applying the "deterrent effect doctrine," under which other federal courts of appeal have found standing based on allegations that "person has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation"). In combination with her other allegations, plaintiff has at least "plausibly suggested" that she faces a real and immediate threat of discrimination the next time her husband needs to exercise his health care rights at a VA hospital for any serious conditions.

While this addresses defendants' facial challenge, there is still a question of defendants' purported *factual* challenge to standing, which they raise by pointing to a

change in policy to provide "interpretive services" not just to patients but "families" and attaching the current policy, post-dating the events at issue in this case to their motion to dismiss. As defendants further point out, "courts may properly look beyond the jurisdictional allegations of a complaint and view evidence to determine whether subject matter jurisdiction exists in fact." *Ciarpaglini v. Norwood*, 817 F.3d 541, 543 (7th Cir. 2016).

Still, "a defendant seeking dismissal based on its voluntary change of practice or policy must clear a high bar." *Id.* at 545. "A case might become moot if subsequent events made it *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (emphasis added)). Since defendants are alleging mootness, theirs is a "heavy burden" to persuade the court "that the challenged conduct 'cannot reasonably be expected to start up again.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Under the new policy, adopted March 1, 2016, and attached to the declaration of Jane Ludwig, the Chief of Social Work and Chaplain Services at the VA Hospital, the purpose of "interpreter services" is to "assist patients and *families* in the normal delivery of medical care when the use of a common language is not possible." (Ludwig Decl., Ex. A (dkt. #15-1).) The policy further directs staff to contact Social Work Services to arrange for interpreters, including *sign language* interpreters. (*Id.*) In her declaration, Ludwig also avers that the VA has four different vendors available to provide in-person, sign language interpreters, and it is in the process of registering a fifth. (Ludwig Decl.

6

(dkt. #15) ¶ 12.) Since the incident precipitating this lawsuit, the VA also represents that it has implemented VRI services available via computer 24 hours a day, seven days a week at any VA hospital, and it in the process of finalizing connections and equipment for the same service at its clinics. (*Id.* at ¶ 13.)

In response, however, plaintiff filed her own declaration, indicating that she accompanied her husband for further treatment at the VA hospital in June 2016, *after* the new policy was purportedly in place. Nevertheless, she avers that the VRI device provided did not work, apparently because both the required software was not installed and the wireless internet connection was inconsistent throughout the hospital. (McRaniels Decl. (dkt. #21) ¶¶ 2-6.) Moreover, after plaintiff complained, the hospital was unable to fix the VRI or to provide an in-person interpreter. Based on this experience, plaintiff argues that even if the new policy has been adopted, it is inadequate as a matter of fact to meet her needs. Therefore, plaintiff asserts, defendants have failed to meet their "heavy burden" of demonstrating that the policy moots her challenge. (Pl.'s Opp'n (dkt. #19 8.)

In reply, defendants would have the court extend their pending motion to dismiss far beyond the scope of a standing challenge, instead arguing what is reasonably required under the Rehabilitation Act itself. (Defs.' Reply (dkt. #22) 4-5.) While this argument may also have merit when timely raised in a motion for summary judgment, defendants advancing it in reply only underscores their failure to prove "that the challenged conduct cannot reasonably be expected to start up again" on the limited record at the motion to dismiss stage. *Ciarpaglini*, 817 F.3d at 545. Indeed, plaintiff's experience post-dating the

adoption of the new policy belies defendants' position. As such, the court rejects defendants' challenges to standing.

**II. Private Right of Action**

Next, defendants seek to dismiss plaintiff's Rehabilitation Act claim on the basis that there is no private right of action against federal agencies for disability discrimination in federally-run programs. Section 504 of the Rehabilitation Act prohibits discrimination "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. Section 504, the remedies provision, however, describes remedies available to persons "aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title," 29 U.S.C. § 794a, without mentioning "Executive agency." From this, defendants reason that there is no private right of action.

While the court agrees with defendants -- and plaintiff does not dispute -- that there is no express private right of action, reading sections 504 and 505 together compels a finding of an implied private right of action for reasons persuasively set forth in *Davis v. Astrue*, No. C-06-6108 EMC, 2011 WL 3651064, at *3-5 (N.D. Cal. Aug. 18, 2011). Reviewing the Act's legislative history, the *Davis* court explained that Congress intended "to extend section 504's reach to ensure that no one would be exempt from its nondiscrimination provision. Section 505's remedy therefore must be available to victims of discrimination by federal agencies in their programs and activities brought within section 504's umbrella by the 1978 amendment." *Id.* at 4 (quoting *Doe v. Attorney*

8

*General*, 941 F.2d 780, 785 (9th Cir.1991), *overruled on other grounds by Lane v. Pena*, 518 U.S. 187, 191 (1996)). Of course, as the Court in *Lane* held, there is no right to monetary damages against the federal government under the Rehabilitation Act. *Lane*, 518 U.S. at 200.

The cases cited in support of defendants' contrary position are distinguishable either because: (1) those cases concerned whether there is a private right of action to require a federal agency to respond to an administrative complaint, *e.g., SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 110 (D.D.C. 2015) (holding that "Plaintiff does not have a cause of action under the Rehabilitation Act for the agency's failure to respond to the SFO complaint in a timely manner"); or (2) the holding was limited to claims against the United States in a regulatory capacity, *e.g., Kinneary v. City of New York*, 358 F. Supp. 2d 356, 360 (S.D.N.Y. 2005) ("[T]here is no implied private right of action in the Rehabilitation Act against the United States when acting as a regulator."); *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 605 (1st Cir. 1989) (same). As such, the court rejects this basis for dismissal.

## III. Exhaustion

Defendants also seek to dismiss plaintiff's Rehabilitation Act claim on the basis that she failed to exhaust her administrative remedies. This argument never gets off the ground. In *Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980), the Seventh Circuit held "the Rehabilitation Act does provide the handicapped with affirmative rights, does create a private right of action and does *not* require exhaustion of administrative remedies." *Id.* at 603 (emphasis added). While the court cited to *Lloyd v. Regional Transportation*

*Authority*, 548 F.2d 1277 (7th Cir. 1977), for support, and defendants attempt to distinguish *Lloyd* on the basis that that court hinted exhaustion may be required once regulations are in place, the *Adashunas* court held three years later that exhaustion was not required, outside of the employment context, without *any* such reservation. Even if this were an open question at the time defendants filed the motion to dismiss, the United States Supreme Court's recent decision in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 758 (2017), would appear to put their challenge to rest.

**IV. APA Claim**

Finally, defendants seek to dismiss plaintiff's APA claim on the basis that she failed to identify an "agency action" as defined in 5 U.S.C. § 551(13). Plaintiff contends, in response, that when an action is required (as compared to simply discretionary), "the failure to take such action constitutes a reviewable final action under the APA." (Pl.'s Opp'n (dkt. #19) 19.) Here, however, the regulations at issue requiring the VA to furnish auxiliary aids provide for significant discretion in their implementation. (Defs.' Reply (dkt. #22) 11-12.) As such, the court agrees with defendants that plaintiff's complaint does not implicate a legally required, discrete action, such as a failure to issue a rule within a specified period of time, but rather concerns ministerial or non-discretionary acts. *See Nortan v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). Accordingly, the court will dismiss plaintiff's APA claim.

ORDER

IT IS ORDERED that:

1) Defendants United States Department of Veterans Affairs and Secretary David Shulkin's motion to dismiss is GRANTED as to plaintiff's APA claim and otherwise DENIED.

2) The clerk of court is directed to amend the docket to reflect the substitution of defendant Robert A. McDonald for David Shulkin.

Entered this 18th day of May, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge